# ALBERT L. JOHNSON v. ANDREW KUTCHES.[1]

May 26, 1939.

No. 32,054.

*T. J. Mangan,* for appellant.

*Swanson Brothers* and *Murphy, Johanson & Winter,* for respond-ent.

HOLT, JUSTICE.

Just before midnight, July 27, 1937, plaintiff, driving in his sedan southeasterly upon the cement paved highway No. 12, from Clontarf toward Benson, crashed into the rear of defendant's truck temporar-

[1]Reported in 285 N. W. 881.

ily parked on the pavement. Plaintiff was severely injured. One Lindahl riding with plaintiff was also hurt. Each sued defendant. The actions were tried together, but separate verdicts were rendered against defendant. He appeals only from the order denying his motion for judgment notwithstanding the verdict or a new trial as to this plaintiff.

The assignments of error are numerous, but many relating to the rulings on evidence and the refusal to give requested instructions are obviously without merit and need not be referred to. The questions of substance presented by the appeal may be thus stated: (1) Does the evidence sustain the verdict or is defendant entitled to judgment notwithstanding? (2) Was there error in the admission or exclusion of evidence to the prejudice of defendant? (3) Did the court err in refusing to give requested instructions? (4) Is the verdict so excessive as to indicate that passion or prejudice actuated the jury?

The question whether the verdict is sustained depends entirely upon whether or not plaintiff's contributory negligence appears as a matter of law. There is no real contention that there is not sufficient evidence to sustain the issue of defendant's negligence. Defendant owned a large truck equipped with box for hauling sand and gravel. He and one Jacobsen lived at Benson. They there, in a cafe or beer parlor, met one Mrs. Anderson and a high school girl who was to work for Mrs. Anderson the next day. The women were invited to take a ride to cool off. They drove northwest on trunk highway No. 12 to Clontarf, where some time was spent at a restaurant and a tavern. Shortly before midnight they left for Benson. Defendant was driving. Mrs. Anderson sat next, holding Alice, the high school girl, on her lap. Jacobsen sat next to Mrs. Anderson. When the truck came within about three miles of Benson it was stopped either wholly or mostly on the pavement. Defendant and Mrs. Anderson alighted, but Alice and Jacobsen remained seated. Defendant says he went back to attend to some timbers or scantling on the box that rattled; Alice testified that Mrs. Anderson was too warm and wanted to get out of the cab and get

into the box. As the truck was so standing and after defendant had taken his place behind the wheel, but before Mrs. Anderson had gotten on, plaintiff's car crashed into the rear of the truck. Mrs. Anderson was knocked down and lay injured on the pavement some six feet directly in front of plaintiff's car.

Plaintiff and Lindahl, who were also residents of Benson, because of the heat, had earlier in the evening driven out in the country to cool off. They also came to Clontarf and spent some time there. They admit drinking three small bottles of 3.2 beer during their stay. They met defendant and his party and saw them leave for Benson. Plaintiff and Lindahl followed some 15 minutes later. Mrs. Anderson and Mr. Jacobsen were not witnesses at the trial. Plaintiff and Lindahl testified that the truck had no taillight burning; defendant testified that it was burning when he went back to adjust the rattling.

The contention of defendant that plaintiff was shown contributorily negligent as a matter of law is based chiefly on the claim that he was required to have his car equipped with headlights that reveal obstructions at such a distance ahead that the car can be stopped before striking the same. It is said either his headlights were defective or else he was inattentive to what they revealed, and, in either case, his negligence is conclusively established. The road for more than a mile in either direction from where the truck was stopped is straight and level, passing through an open farming district. But plaintiff and Lindahl testify that just a few moments before the crash came the glare of the headlights of a meeting motor vehicle interfered with their vision and diverted their attention. They also testified, and there is no direct contradiction thereof, that the appearance of defendant's truck blended with that of the pavement so that its presence could not be detected until they were within 20 feet or less thereof though the headlights on plaintiff's car were burning brightly. Plaintiff claims that when nearing the approaching blinding headlights he reduced his speed from 35 or 40 miles an hour to 20 or less at the time of impact.

It is not necessary to recite more of the testimony. There is no more than the usual conflict met with in auto accident cases, and

that was for the jury. On the whole record it cannot be said that plaintiff's contributory negligence appears as a matter of law. Nor can it be said that the jury's finding, implicit in the verdict, absolving plaintiff from contributory negligence, is not so well sustained by the evidence that there should be a new trial. Defendant's counsel cites eight decisions of this court which, he contends, should lead to judgment *non obstante* or at least to a new trial. Of these the only one wherein the record presents a situation at all comparable to that of the instant case is Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42. But it is to be noted that there the plaintiff knew that the headlights of his car were so set that the driver could not discover an obstacle ahead until within 40 feet thereof, there were no distracting meeting lights, nor was there any dispute as to its being a bright, clear night. The two cases of Jacobs v. Belland, 171 Minn. 338, 214 N. W. 55, and Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283, cited in the Orrvar opinion and distinguished from the situation there presented, support the view that plaintiff's contributory negligence was for the jury. So do the later cases of Vogel v. Nash-Finch & Co. 196 Minn. 509, 265 N. W. 350; Hartwell v. Progressive Transp. Co. Inc. 198 Minn. 488, 270 N. W. 570; Twa v. Northland Greyhound Lines, Inc. 201 Minn. 234, 275 N. W. 846.

The only assignment of error in respect to the admission or exclusion of evidence meriting consideration is this: Plaintiff and Lindahl testified to the absence of a lighted taillight on the truck. Whether or not this taillight was burning bore to some extent both on the issue of defendant's negligence and on that of plaintiff's contributory negligence. Defendant called one Tengvall, who, after stating that he examined the taillight in Benson "that evening" (evidently the evening of the 28th of July) was asked as to "the condition of the mechanism in which that bulb was." Plaintiff's objection to the inquiry as irrelevant, immaterial, and no foundation, being sustained, defendant offered to prove by Tengvall that the truck was examined by the witness after it was brought into Benson and particularly the red light showed "that there was mud and other dust and debris about the mechanism in which the rear

light bulb was enclosed, and had not been changed, nor possible to have been changed without some marks * * * that after examining it he turned on the switch and that the rear light was working, and I expect to prove that by this witness." To this offer the same objection was interposed as to the former question and also that it was "too remote and not tending to prove any of the issues in this case." The offered testimony ought to have been received for what it was worth, even though the offer was not satisfactory in respect to the foundation of Tengvall's knowledge of the mechanism of the lighting arrangement. But we do not think the exclusion of his testimony should result in a new trial. We think it unlikely that the jury attributed any importance to whether or not the taillight of the truck was burning, for Mrs. Anderson, a large woman, was unquestionably standing back of the truck, thus shutting off the view of the taillight from plaintiff and Lindahl as they approached, because she was found after the impact lying injured upon the pavement about six feet directly in front of plaintiff's car. The truck was moved some 15 or 20 feet ahead. Before Tengvall was called, defendant called the sheriff to the stand to show that he had placed subpoenas in hands of the sheriff for Mrs. Anderson and Mr. Jacobsen. Mrs. Anderson had been served but was not in court. Each attorney insinuated that the other had something to do with Jacobsen's disappearance, although it is apparent that Jacobsen was so under the influence of strong drink at the time that his testimony would be absolutely valueless. However, it appeared from a doctor's evidence that Mrs. Anderson was in his hospital in Benson, where the trial was had, in such physical condition from her injuries in the accident that she was unable to come to the trial, but was entirely capable mentally to give her deposition, and plaintiff's attorney then and there offered to take her deposition at the hospital, but instead of so doing Mr. Tengvall was called. Mrs. Anderson certainly was in as good or better position to corroborate defendant as to the condition of the taillight than Mr. Tengvall. The same situation contributed to or caused the collision in Vogel v. Nash-Finch & Co. *supra,* as here—a person interposing himself between the taillight and the vehicle approaching from the

rear. We do not think that defendant may justly claim prejudice from the exclusion of the proffered proof.

The instructions requested and refused were not applicable to the evidence adduced. The truck was not disabled. There was no such evidence of fog as to require a specific reference thereto in the charge. Nor was there any occasion to give the emergency rule. Nor did the evidence justify the giving of L. 1937, c. 464, § 28(h) (3 Mason Minn. St. 1938 Supp. § 2720-178[h]). The court clearly charged the jury, in weighing the testimony of a witness, to consider the interest of such witness in the outcome of the case, and it was improper to single out plaintiff's testimony as was sought by the 11th and 12th requests of defendant.

The verdict is assailed as so excessive as to indicate that passion and prejudice influenced the jury. This assignment appears of more merit than any of the others. The verdict was for $5,000. The medical and hospital bill was a little over $400, leaving $4,600 for suffering, loss of time, and permanent disability. This amount is liberal. But the accident left plaintiff somewhat handicapped. He is a harness maker, 54 years of age. His injuries consisted of the fracture of a bone in the right hand connected with the little finger. He claims that it healed so as to interfere with the ability to grip with that hand either thread or tool in doing the sewing in his work. Moreover, the most serious injury was to the left knee-cap, fractured into four pieces, which had to be wired together. In the procedure a three-cornered piece in about the center disappeared and from present appearances will never be fully replaced by new bone. Plaintiff was in the hospital one month and bore the usual casts. He was confined to his bed at home for two weeks after leaving the hospital. He was compelled to use crutches for some time, but used only a cane at the time of the trial. There is a contention among the medical experts that plaintiff is permanently disabled to a certain extent. Some of defendant's experts attribute his disability more to his mental than to his physical condition. However, since his injuries he earns only $10 a week, whereas his weekly wage before was $14. In that situation we do not think the verdict is so large that this court can con-

clude that passion or prejudice actuated the jury, the trial court, with better opportunity to judge of the injury than we, having approved the verdict.

Order affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.