ANNA JURGENSEN v. SCHIRMER TRANSPORTATION
COMPANY.
WILLIAM CARROLL v. SAME.[1]

May 7, 1954.

Nos. 36,209, 36,210.

[1]Reported in 64 N. W. (2d) 530.

*Robins, Davis & Lyons,* for appellants.
*Murnane & Murnane,* for respondent.

Frank T. Gallagher, Justice.

This appeal involves two actions brought against defendant Schirmer Transportation Company. One was brought by the estate of Sam Jurgensen for damages for his death resulting from the alleged negligence of defendant's agent in the operation of an oil transport. The other was brought by William Carroll for injuries allegedly resulting from the same accident. The actions were tried together, and verdicts were rendered for defendant in both actions. Both plaintiffs appealed from the orders denying their motion for a new trial.

On December 20, 1950, at about 8 p. m., a fire engine owned by the city of St. Paul responded to a call to a fire at the intersection of Randolph street and Lexington avenue. The fire engine proceeded west on Randolph to Lexington, where it turned right and proceeded only a few feet north on Lexington. It then stopped and, in order to get into position to fight the fire, began to back diagonally across the intersection of Randolph and Lexington in a southwesterly direction. In the meantime, defendant's semitrailer-type oil transport was proceeding east on Randolph toward the Lexington avenue intersection. It is agreed that the streets were extremely slippery. Randolph, which is an arterial highway, has a downgrade of 4.8 percent approaching Lexington from the west. The oil truck collided with the right rear of the fire engine near the south curb of Randolph at a point near the intersection with Lexington. There is a disagreement between the parties as to exactly where the collision occurred and as to whether the fire engine had stopped before it was hit. Sam Jurgensen, who was riding on the right rear of the fire engine, was killed in the collision. William Carroll was riding on the left rear of the fire engine and allegedly received the injuries for which he seeks damages in this action.

Plaintiffs claim that the conduct of Charles Tinkey, the driver of defendant's oil truck, as described by his own testimony, constituted negligence as a matter of law.

Tinkey admitted that he saw two red lights ahead of him near the north side of Randolph street when he was from 750 to 930 feet

from the Lexington avenue intersection and that he knew they indicated danger. He also admitted that, although he knew that he was driving on an extremely slippery street, he failed to shift into a lower gear in order to get better control over the oil truck and that he applied only four of the ten brakes available on the tractor-trailer, thus reducing the speed only a few miles an hour. He testified that when he first saw the two red lights he could have stopped "within a few feet," although at another point in his testimony he said that, after first observing the lights, he could not have stopped before reaching the intersection. He said that as he reduced the distance between himself and the red lights he was aware that the lights were moving toward his side of the street. He further testified that he did not see the fire engine itself until he was from 60 to 100 feet from it. Several other witnesses testified that there was an electric street light at the Lexington avenue intersection; that they saw the fire engine in the intersection from distances considerably greater than Tinkey did; and that they had heard sirens sounding and were aware that emergency vehicles were in the area.

The record, however, contains considerable evidence tending to justify and explain the conduct of Tinkey. Although the evidence was in conflict, there was testimony from which the jury could have found that the fire engine backed into the path of the oil truck and into the field of its headlights and that it was still moving backward when the accident occurred. It is undisputed that, from the rear, the fire engine displayed only two red lights, similar to the taillights of a passenger vehicle except that they were located one above the other on the left rear of the fire truck. There was evidence from which the jury could have found that the siren of the fire engine was not sounding during the time the engine was backing across the intersection. Tinkey testified that he did not hear any siren. This testimony was corroborated by Mrs. Delores Horeish, who was seated in an automobile near the intersection. Thus, the jury could have concluded that Tinkey had no warning that the lights in the intersection were on an emergency vehicle until he saw the fire engine itself. He testified that, after discovering the red lights ahead

of him in the street, he applied the brakes on the trailer intermittently in order to reduce its speed and that he edged over to the right side of Randolph street. This testimony was corroborated by the driver of an automobile which was traveling behind the oil truck prior to the accident. Tinkey explained that he did not apply all the brakes because he feared that the tractor-trailer would "jack-knife" on the slippery streets. The driver of the car following defendant's truck testified that, although he pulled into the center lane in order to be able to see around the truck, he could see no vehicles in the Lexington avenue intersection. Tinkey also testified that he was traveling with his lights on low beam. He said that he was traveling at a speed of from 15 to 20 miles an hour when he first saw the red lights ahead of him and that when he was 100 feet from the fire engine he tried to come to a complete stop. One witness, Elmer Nelson, testified that just before the collision the speed of defendant's truck "couldn't have been much more over ten miles an hour."

■ Thus, we have a conflict in the evidence which clearly made the question of the alleged negligent conduct of the driver of defendant's truck a jury issue. It would be unreasonable for us to say, under the circumstances here, that after Tinkey discovered the red lights ahead of him in the intersection he should have anticipated that they would move backward into his path, contrary to law. Emergency vehicles are authorized to operate contrary to the statutory rules of the road only if giving audible signal by siren. M. S. A. 169.20, subd. 5; Hogle v. City of Minneapolis, 193 Minn. 326, 258 N. W. 721. There was evidence, also disputed, that the siren on the fire engine was not being sounded. Tinkey had a right to assume that other drivers would operate their vehicles in a lawful manner. Pearson v. Norell, 198 Minn. 303, 269 N. W. 643; Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357. The risk of jackknifing the trailer as a result of locking the brakes while traveling on the icy street was another thing which had to be considered.

It is elementary that on this appeal defendant is entitled to the benefit of every reasonable inference from the evidence (Moore v. Kujath, 225 Minn. 107, 29 N. W. [2d] 883, 175 A. L. R. 1007; Schra-

der v. Kriesel, 232 Minn. 238, 45 N. W. [2d] 395) and that the determination of the jury must stand unless manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to defendant. 1 Dunnell, Dig. (3 ed.) § 415, and cases cited. Where reasonable men can differ over whether particular conduct constituted the exercise of due care, that question is for the jury. Schrader v. Kriesel, *supra.* In view of the conflicting testimony, the jury reasonably could have concluded that the efforts Tinkey made to avert the accident were commensurate with the danger which he was, or should have been, aware of under the circumstances. We cannot say, under the record here, that the evidence is manifestly and palpably contrary to such a conclusion.

Plaintiffs cite as controlling Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42, in which plaintiffs' son, while driving their car, was held guilty of contributory negligence as a matter of law for colliding with the rear of an unlighted truck which defendant was endeavoring to push off the highway after it had stalled on a clear summer night. In that case, this court reasoned that the driver of plaintiffs' car either must not have been maintaining a proper lookout or was traveling so fast that he could not stop within the range of his vision. We feel that there is an important difference between that case and the one at bar. In the instant case the jury could have found that the fire engine backed into the path of defendant's truck and into the area lighted by its headlights. We feel that the Orrvar case has been distinguished so often that it can no longer be considered as an authority except in the limited field covered by its facts.[2]

Plaintiffs also rely on Kopp v. Ryckman, 238 Minn. 342, 57 N. W. (2d) 31, which affirmed the trial court's action in granting judg-

---

[2]See, Tully v. Flour City Coal & Oil Co. 191 Minn. 84, 253 N. W. 22; Vogel v. Nash-Finch Co. 196 Minn. 509, 265 N. W. 350; Becker v. Northland Transp. Co. 200 Minn. 272, 274 N. W. 180, 275 N. W. 510; Twa v. Northland Greyhound Lines, Inc. 201 Minn. 234, 275 N. W. 846; Martini v. Johnson, 204 Minn. 556, 284 N. W. 433; Johnson v. Kutches, 205 Minn. 383, 285 N. W. 881; Olson v. Duluth, M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492 (see dissenting opinion).

ment for defendant notwithstanding the verdict on the ground that plaintiff was contributorily negligent as a matter of law. There, plaintiff, the driver of a semitrailer unit, admitted that, although he knew that he was driving on roads that were extremely slippery and so hilly that he probably would have to rely on his brakes because of the presence of other vehicles, he nevertheless drove at such a speed that "he could not apply the brakes" on either the tractor or the trailer without danger of jackknifing or fishtailing. His failure to maintain control of the vehicle contributed proximately to the collision of the fishtailing trailer with a car which had stopped on the edge of the highway. The driver in the instant case testified that he had applied the brakes on the trailer intermittently for a considerable period but that, upon discovering the fire engine backing into his path, was unable to stop despite the application of the brakes. Also, there is no evidence that Randolph street is so hilly that the presence of vehicles obscured by hills might require sudden stops. We conclude that neither of these decisions controls the disposition of the case at bar.

■ Plaintiff's next contend that three portions of the instructions to the jury were so erroneous and prejudicial that a new trial is required. The following language is cited as one of these:

"* * * Moreover the law requires that the plaintiff prove each of these three items by an overweight of the evidence, that is, evidence which to some appreciable extent and some recognizable degree is more forcible and convincing than is the evidence of the opposing party."

Plaintiffs argue that the trial court imposed too great a burden in requiring proof of its case by an "overweight" of the evidence. We do not agree. Conceding solely for the purpose of argument that the term "overweight" of the evidence standing alone would define too high a standard of proof, the trial court went on in the very same sentence of its charge and defined that expression in terms of the well-settled requirement of burden of proof in civil cases. Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580; 7 Dunnell, Dig. (3 ed.) § 3473. In view of that fact, it appears unneces-

sary to speculate upon what the jury might have considered the term "overweight" to have required had it not been defined by the court.

Plaintiffs claim that the following portion of the charge may have misled the jury into the erroneous assumption that negligence on the part of the driver of the fire engine would bar recovery by plaintiffs:

"* * * Of course, if the operator of the fire truck, that is its driver or captain were negligent, and if that negligence were the only direct or proximate cause, no liability can be imposed upon the defendant under any circumstances because as I said before the law imposes upon the plaintiff the burden of proving that the defendant's driver was negligent and that such negligence was a direct or proximate cause."

This statement, of course, is technically correct, and plaintiffs do not claim otherwise. We conclude that any danger that the instruction quoted would confuse or mislead the jury with respect to the issue of concurrent negligence was removed by the following instruction, which immediately preceded the one last quoted:

"* * * If the collision would not have resulted except for the concurrence of negligent acts or omissions of the operators of both trucks, the plaintiff might nevertheless recover against the defendant because where the concurrent or successive negligence of two parties results in injuries to a third party, the latter may recover from one notwithstanding the other's negligence."

A charge to the jury cannot be successfully attacked by lifting a statement out of context but must be analyzed as a whole. Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807; 6 Dunnell, Dig. & Supp. § 9781. Viewing this charge in its entirety, we feel that it conveyed to the jury a proper interpretation of the law with respect to concurrent negligence.

Plaintiffs also claim that, since the negligence of the driver of the fire engine would not have barred the recoveries of plaintiffs, such negligence was not an issue in the case and that the reference in the

charge to "reckless disregard of the safety of others" on the part of the driver of the fire engine was improper. This reference was to the following language:

"The speed limitations, which I have just read, do not apply to fire trucks when responding to emergency calls, but the driver thereof shall sound audible signal by siren and display at least one lighted red light to the front. This provision does not relieve the driver of a fire truck from the duty to drive with due regard for the safety of persons using the street, nor does it protect the driver of a fire truck from the consequence of a reckless disregard of the safety of others."

This language is almost an exact quotation of M. S. A. 169.17. It immediately followed a reading of the relevant statutes regulating speed of vehicles on the highway. As indicated earlier, if the fire engine siren was not being sounded, the statutes regulating operation of ordinary motor vehicles applied. Tinkey had a right to assume that drivers of other vehicles would operate them in a lawful manner, as we have already noted. Thus, the quoted statutes relating to traffic regulation were relevant to the issue of whether Tinkey should have anticipated the movements of the fire engine prior to the collision. They were properly read to the jury, even though negligence of the fire engine driver would not, of itself, bar plaintiffs' claims.

■ Plaintiffs assign a number of statements in the closing argument of counsel for defendant as misconduct so prejudicial as to require a new trial. We agree that on several occasions defendant's argument went beyond what would have been necessary to properly comment on the evidence. Part of the argument was devoted to matters which were not particularly relevant to the merits of the controversy and clearly must have been injected for its influential effect on the jury. There were other insinuations or accusations to the effect that plaintiffs' attorney had attempted to conceal facts from the jury by failing to call a certain witness, Delores Horeish, or that he had tried to influence the testimony of that witness. There appears to be no evidence in the record which would support

either of those lines of argument. However, although counsel for plaintiffs did object to part of the argument when it was made, we find no request to the court, at that time or at the end of the argument, for appropriate corrective action on which the court failed to act. Neither do we find any request for an instruction, either before or after the charge to the jury, to have it disregard what counsel considered improper argument, even though plaintiffs did take exception to several other parts of the instructions after they had been given. No further mention of the alleged misconduct was made until plaintiffs filed their notice of motion for a new trial, which included misconduct of counsel as one of the grounds for the motion.

While we do not at any time sanction or condone improper arguments on the part of counsel on either side in any case, the offended party ordinarily must suggest to the trial court, before the jury retires, that part of the argument which he considers objectionable and must request proper or appropriate instructions to correct the claimed errors. State v. Jansen, 207 Minn. 250, 290 N. W. 557. As stated in Eilola v. Oliver I. Min. Co. 201 Minn. 77, 80, 275 N. W. 408, 409:

"* * * Ordinarily, in order to obtain a review of misconduct of counsel in argument, there must be an objection at the time of the alleged misconduct, a request by the party claiming to be prejudiced for appropriate corrective action, and a failure of the trial court to rule or act. * * *

\* \* \* \* \*

"* * * Ordinarily, expression of satisfaction with the charge by counsel and failure to call the court's attention to errors before the jury retires would suggest that errors complained of were not deemed to be prejudicial by counsel at the time."

It is our opinion that there was neither a timely request for appropriate corrective action nor a failure on the part of the trial court to act on such a request which would permit us now to review the alleged misconduct, unless it was so flagrant and reprehensible that the trial court should have acted on its own motion to correct it. See, Magistad v. Potter, 227 Minn. 570, 36 N. W. (2d) 400;

Janicke v. Hilltop Farm Feed Co. 235 Minn. 135, 50 N. W. (2d) 84.

We have carefully considered the argument in its entirety, and, while we can understand why counsel for plaintiffs did not approve of some of the things said or insinuations made in the argument by defendant's counsel, we cannot say that they were so flagrant or reprehensible as to have required the court to act on its own motion to correct the situation, as this court considered should have been done in Magistad v. Potter, *supra*. While it is regrettable that in the heat of a legal controversy such incidents occur from time to time in closing argument, modern juries generally are keen and alert and usually sift the "wheat from the chaff" when they retire to a jury room to consider the case in its entirety. Flemming v. Thorson, 231 Minn. 343, 43 N. W. (2d) 225. See, also, Murphy v. Barlow Realty Co. 214 Minn. 64, 7 N. W. (2d) 684, quoting from Devine v. Chicago City Ry. Co. 167 Ill. App. 361, 364.

We have carefully considered the balance of plaintiffs' assignments of error and conclude that they do not justify the granting of a new trial.

Affirmed.