DONNA BEEBE v. OTTO R. KLEIDON AND ANOTHER.
MURIEL TAGUE v. SAME.[1]

July 23, 1954.

Nos. 36,151, 36,152.

[1]Reported in 65 N. W. (2d) 614.

*Murnane & Murnane,* for appellant.
*Mendel Weiner,* for respondent Donna Beebe.
*Sullivan, Stringer, Donnelly & Sharood,* for respondent Muriel Tague.

CHRISTIANSON, JUSTICE.

In the early morning of March 16, 1952, a collision occurred at the corner of Sims and Arcade streets in the city of St. Paul. Plaintiffs, Donna Beebe and Muriel Tague, occupied a car traveling in an easterly direction on Sims street. As plaintiffs' car crossed Arcade it was struck by a Hudson automobile driven by defendant Bruce S. Kleidon which approached the intersection from the south on Arcade. As a result of the collision, plaintiffs received injuries and brought these actions, naming as defendants Bruce S. Kleidon and Bruce's grandfather, Otto R. Kleidon, driver and owner respectively of the Hudson car.

The accident was the culmination of a wild chase which began about 1:30 a. m. when a police squad car gave pursuit after spotting the Hudson car traveling at an excessive speed. At times during the chase the speed of the Hudson automobile approached 90 miles per hour. The trial court directed verdicts against the driver, Bruce Kleidon, on the issue of liability and he has not appealed. The question of the owner's consent was submitted to the jury and resulted in verdicts against the owner, Otto R. Kleidon, who appeals from the order of the trial court in each action denying his alternative motion for judgment notwithstanding the verdicts or a new trial.

■ Appellant, Otto Kleidon, contends that the evidence does not sustain the jury's finding that Bruce Kleidon was driving the Hudson automobile with the express or implied consent necessary to establish his liability under the safety responsibility act, M. S. A. 170.54. The facts established at the trial relative to the issue of Otto Kleidon's consent to the use of his automobile are substantially as follows:

Bruce, who was 15 years of age at the time of the accident, had lived with his grandparents and had been part of their household since he was five years old. He began driving his grandfather's car in May 1951 when he first received his driver's license and continued to do so until the fall of 1951, when he was apprehended while speeding and the license was revoked by juvenile authorities. Later his grandfather requested the issuance of a restricted license which authorized Bruce to drive only when accompanied by his grandmother. Thirty days after the restricted license was issued, the restrictions were removed and Bruce's full driving privileges were restored. In December 1951 Bruce's license was again revoked, this time as a result of passing a streetcar illegally. During the three months which followed the streetcar incident, Bruce had no license at all, and, although he testified that he did not drive the car, Marjorie Beaver, a passenger in the Kleidon car at the time of the accident, testified that Bruce had visited her at her home in Stillwater during this period. On two of these visits, he apparently went alone and drove his grandfather's car. Though the dates are not specific, the testimony of a police officer in White Bear indicates that Bruce had driven the car alone on other occasions prior to the accident, even prior to the time he received his driver's license. Early in March 1952, approximately two weeks prior to the accident giving rise to this action, Otto Kleidon, after a conference with highway department officials, again procured for Bruce a restricted license containing the same condition as the former restricted license, that is, permission to drive only when accompanied by his grandmother. It was this restricted license which was in effect on the date of the accident in which plaintiffs were injured.

On the night of the accident Mr. and Mrs. Kleidon left Bruce at home and drove to the home of their son-in-law, Mr. Ralph Munchow, who lived five miles from the Kleidon residence. Later in the evening, while his grandparents were still visiting their son-in-law, Bruce arrived at the Munchow residence and drove off with his grandfather's car, using a set of keys which, according to the testimony of Bruce and his grandmother, he had found hidden under the

mattress of Mrs. Kleidon's bed. His grandfather was not aware of Bruce's activity and did not realize that the car was missing until he left the Munchow residence intending to return home.

Following the accident, both Bruce and his grandfather, Otto Kleidon, were interviewed by an investigator and the questions propounded to them and their answers were recorded by a court reporter. The answers given at that interview vary in material respects from the testimony the defendants gave on the stand. At the trial, Bruce denied that he ever drove the Hudson without express permission, yet he answered in the negative at the interview when asked if he usually obtained permission before taking the car. Bruce also stated at the interview that his grandfather had given him a set of keys to the car which he kept in his possession, but he flatly denied this at the trial. The jury could find from the evidence that these statements were made in the presence of Otto Kleidon, that they were heard by him, and that they were made under circumstances where his failure to deny the truth thereof amounted to his acquiescence therein and to an admission on his part that they were true. Furthermore when Otto Kleidon was questioned, he stated that the keys had not been taken away from Bruce, even after his driver's license was restricted. Otto Kleidon was also asked the following question at the interview:

"[Q.] 'Then what did you do then when you saw the car was missing?'

\* \* \* \* \*

"A. 'We were surprised, and my son-in-law was also there, and we waited a while not knowing if the car wouldn't come back. It might be that my son was out that night, and might have had trouble, and I think I gave him the key once for emergency, which I have in my purse, *and it could be also that something happened here, and Bruce here had to have the car,* but we could not make out what it was, and we looked around.'" (Italics supplied.)

In view of these admissions which are entirely inconsistent with Otto Kleidon's insistence at the trial that Bruce did not have permission to take his car on the night of the accident; his efforts on

two previous occasions to have Bruce's driving privileges restored; and the other facts and circumstances presented, we think the existence or nonexistence of implied consent was a jury question. Implied consent may be drawn from all the facts and circumstances of the case. Cf. Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744; Koski v. Muccilli, 201 Minn. 549, 277 N. W. 229. It follows that the trial court properly denied defendant Otto Kleidon's motion for judgment notwithstanding the verdicts against him.

■ In support of his motion for a new trial, defendant Otto Kleidon assigned as error the exclusion of his testimony and that of a police officer to the effect that some time after the accident Bruce stated to each of them that he was driving without permission or consent of his grandfather on the night in question. The offered testimony was clearly hearsay, and plaintiffs' objections thereto on this ground were properly sustained by the trial court.

Bruce's statements were not admissions against interest, since his liability to plaintiffs was not related to the manner in which he obtained possession of the car but solely to his negligence in operating it. Therefore, as far as the issue of consent is concerned, Bruce was a disinterested party in the instant case, and his statements relative to that issue were not admissions against his interest. Neither can such testimony qualify as a statement against interest since evidence is admissible under that exception to the hearsay rule only when the declarant is deceased at the time of trial. In re Estate of Forsythe, 221 Minn. 303, 22 N. W. (2d) 19, 167 A. L. R. 1; Paine v. Crane, 112 Minn. 439, 128 N. W. 574.

The case of Patterson-Stocking, Inc. v. Dunn Bros. 201 Minn. 308, 276 N. W. 737, relied upon by appellant, is not in point. In that case the declarant was an agent of the owner of the vehicle, and the court held that a third person who heard the agent instruct the driver should have been permitted to testify to the extent of the permission granted to the driver. Such evidence is not hearsay since the words spoken by the declarant are part of the verbal act of giving permission.

Further, Bruce's statements were not admissible as part of the *res gestae*. To come within this exception to the hearsay rule, the declaration must follow a startling occasion; it must be made before there is time for the declarant to reflect upon the impact of the statement; and it must relate to the startling occasion. Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812; 22 Minn. L. Rev. 391, 399 to 400. The determination of how well the facts in a given case satisfy these requirements is a matter that is largely within the discretion of the trial court. Roach v. G. N. Ry. Co. 133 Minn. 257, 158 N. W. 232; Johnston v. W. S. Nott Co. 183 Minn. 309, 236 N. W. 466. If in fact the statement was made by Bruce to the police officer, it occurred some time after he had been taken to the police station. This lapse of time is an important though perhaps not a controlling factor in determining the spontaneity of the statement. As this court stated in Meyer v. Travelers Ins. Co. 130 Minn. 242, 244, 153 N. W. 523, 524:

"The utterances to which the phrase *res gestae* is applied, in cases like the one before us, are hearsay utterances, and they are received as one of the several recognized exceptions to the hearsay rule. Their spontaneity accredits them. So it is an essential of a declaration admissible under the *res gestae* doctrine that its spontaneity give the unsworn statement a credit justifying a jury in hearing and weighing and valuing it along with other items of evidence. Spontaneity or the lack of it may be evidenced by the lapse of time between the main act and the declaration, the opportunity or likelihood of fabrication, the inducement to fabrication, the natural excitement of the declarant, the place of the declaration, the presence there of the visible results of the act or occurrence to which the utterance relates. An utterance made in response to a question may be less indicative of spontaneity than an uninvited one. A declaration against interest may indicate spontaneity more certainly than a self-serving one. Time is an important but not definitely controlling consideration. The lapse of time gives an opportunity for deliberation and may be suggestive of a likelihood of fabrication. It may be one minute or many minutes. It may be so great that the law will

say that the declaration fails to illustrate or characterize the act and is not a part of the *res gestae*. Chief Justice Bleckley puts a part of the thought neatly in this way: 'What the law altogether distrusts is not after-speech but after-thought.' "

Though we have confined ourselves thus far to a consideration of Bruce's statement to the police officer, the same *rest gestae* principles apply to the statement Bruce subsequently made to Otto Kleidon at Ancker Hospital. We therefore find no error in the trial court's exclusion of the offered testimony.

█ Appellant in his motion for a new trial challenged the verdicts against him on the grounds of prejudical remarks and misconduct on the part of counsel for plaintiff Muriel Tague in his closing argument to the jury. Though the record does not contain the closing arguments of counsel, appellant set forth in his motion papers his recollection of the statement complained of as follows:

"We do not want you to return a verdict against the defendant, Bruce Kleidon, alone because such a verdict would be worthless."

While argument is not to be condoned which arouses the prejudice of the jury or is designed to bring into the case facts concerning financial standing where such facts are irrelevant, the record before us hardly warrants our giving consideration to the merits of this question.[2] Appellant for the first time made what was at best an equivocal request for a corrective instruction at the conclusion of the argument to the jury by counsel for plaintiff Donna Beebe.[3]

[2]District Court Rule 27(f) provides as follows:

"Exceptions to remarks by counsel * * * in the closing argument shall be taken while such * * * argument is in progress unless the same is being taken down in full by the court reporter, in which case exceptions taken at the close of the statement or argument shall be deemed seasonable." 186 Minn. xxxiii; 27 M. S. A. p. 645.

[3]The record in this connection is as follows:

"Mr. Murnane: And I feel the Court has probably done as much as can be done at this time to remedy the situation, although I think it is a very grievous offense, and should be treated by the Court, and that is with respect to counsel's summation and remark that a verdict against this boy is known to be no good, to the jury. The Court has, in response to an objec-

This court has repeatedly stressed the importance of timely objections where misconduct of counsel is charged. See, Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 166, 64 N. W. (2d) 530, 535.

It is to be borne in mind that a new trial because of prejudicial argument is granted only to prevent a miscarriage of justice, and whether a new trial is to be granted therefor rests in the discretion of the trial court and its decision will be reversed on appeal only for a clear abuse of discretion. Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814. From all that we are able to gather from the record before us, we cannot say that the conduct complained of was so flagrant and reprehensible that the trial court should have acted on its own motion. See, Janicke v. Hilltop Farm Feed Co. 235 Minn. 135, 50 N. W. (2d) 84. That the jury in the instant case considered the question of defendant Otto Kleidon's liability conscientiously is indicated by the fact that they returned from the jury room twice to have the trial court reread its instructions bearing on the issue of Otto Kleidon's consent to Bruce's use of the automobile the night in question. We cannot say that the trial court's denial of a new trial constituted an abuse of discretion in view of the record presented.

The orders appealed from should be affirmed.

Affirmed.

---

tion, indicated it is not justified by the evidence. I feel in order to remove whatever prejudice may have been created in that regard the Court, *if it sees fit* to, point out that sort of thing is improper, and should be disregarded in its entirety by the jury." (Italics supplied.)