## CLAUDE F. PELZER AND ANOTHER v. ROGER L. LANGE AND ANOTHER.

93 N. W. (2d) 666.

December 12, 1958—No. 37,438.

*Silver, Goff, Ryan & Wallace* and *Allen H. Aaron,* for appellants.
*T. J. Battis* and *Murnane & Murnane,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action by Claude F. Pelzer individually and as father and natural guardian of Deborah Jean Pelzer, a minor, for damages resulting from an accident in which Deborah, then of the age of 6 years, was struck by an automobile driven by defendant Roger L. Lange. The jury returned a verdict in favor of defendants. This is an appeal from the judgment entered pursuant to such verdict.

The accident occurred August 15, 1955, at about 7:30 p. m. Just prior to the impact, Deborah was riding a bicycle in a northerly direction on or near the westerly shoulder of Hamline Avenue between Oakcrest and Brooks Streets in St. Paul, Ramsey County, while Lange's automobile was traveling in a southerly direction in the westerly lane of said avenue.

Plaintiffs contend that a new trial should be granted (1) for error in the trial court's instructions; and (2) for misconduct of counsel (a) in making certain statements to the court just prior to commencement of trial; (b) in propounding certain questions to plaintiff Claude F. Pelzer during the trial; and (c) in connection with certain statements made during the closing arguments.

■ The instructions complained of followed customary instructions as to contributory negligence and proximate cause, and a specific instruction that a child of Deborah's age was required to exercise only that degree of care which would ordinarily be exercised by a child of her age, experience, and intelligence under the same or similar circumstances. In connection therewith the court charged:

48

"Now, again, as before explained to you, a violation of any of those statutes just read pertaining to bicycles shall not be negligence by itself but shall be prima facie evidence of negligence only. * * * the violator of a highway traffic regulation may overcome the prima facie case against him or her by submitting evidence which would first tend to establish· that there was reasonable excuse or justification for such violation, or, second, which would justify a reasonable assumption that under the circumstances present, such violation was not negligent and therefore could not reasonably endanger him or any other person or her entitled to the protection of the act involved. You again will decide after consideration of all of the evidence whether Deborah did or did not violate any of the statutes just referred to, and if you find that she did, whether, first, there was reasonable excuse or justification for such violation, or, second, that she could reasonably assume that under the circumstances such violation was not negligent and therefore could not endanger her or anyone else entitled to the protection of the act or regulation involved.

"Deborah's age has no effect on the violation of any of the statutes read in connection with the use of the bicycle in question. In other words, if a statute has been violated by a person, it has been violated regardless of the age of the violator."

After the jury had retired, it returned and requested further instructions. The court after repeating the above instructions added the following:

"Now, this afternoon I might have left you with the wrong impression with respect to the standard of care required of Deborah regarding the statute. In reviewing my notes, I am inclined to believe I did tell you her age has no effect when it comes to a violation of the statutes. If I did, I was in error.

"The standard of care required of Deborah, whether or not it be in connection with the statutes or the common law, is not that degree of care required of an adult but that degree of care which the ordinary child or person her age, intelligence, and experience would exercise under the same or similar circumstances. That is, once you find there has been a violation of the statute, it makes no difference how old the

person is, but when it comes to whether or not there was justification or excuse or whether she could assume under the circumstances such violation was not negligent and therefore could not endanger her or any other person entitled to the act, then you must take into consideration her age, experience, and intelligence."

Plaintiff asserts that, since M. S. A. 169.02, subd. 2, defines violations of the highway traffic statutes as misdemeanors; and since § 610.08 provides that children under the age of 7 years are incapable of committing crimes, the statutes referred to in the court's charge had no application to Deborah, and hence that it was error to instruct the jury that it might find Deborah negligent if it determined she had been in violation of them at the time she was injured. We do not agree with this contention. This court is committed to the "Massachusetts rule" to the effect that a minor under the age of 7 may be negligent in failing to exercise a degree of care commensurate with the age, capacity, and understanding of a child of similar age acting under similar circumstances. Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1; Audette v. Lindahl, 231 Minn. 239, 42 N. W. (2d) 717; Bruno v. Belmonte, 252 Minn. 497, 90 N. W. (2d) 899. Section 169.96 provides that violations of statutory traffic regulations are prima facie evidence of negligence, and we have held this section to be applicable to minors operating bicycles on the public highways. Demmer v. Grunke, 230 Minn. 188, 42 N. W. (2d) 1; Warning v. Kanabec County Co-op. Oil Assn. 231 Minn. 293, 42 N. W. (2d) 881. Here, if Deborah were found to have violated any of such statutes, the jury might find her actions constituted negligence provided it was determined, as the court instructed, that at the time she had failed to exercise a degree of care commensurate with the age, capacity, and understanding of a child her age acting under similar circumstances. The fact that such a violation might be a misdemeanor for which she could not be punished would not alter the fact that under § 169.96 it was also prima facie evidence of negligence. Accordingly, the court correctly charged that, while she might be guilty of violating the statutes, before the jury should determine its violation constituted negligence, it must decide whether there was a reasonable justification or excuse therefor, taking into consideration

her age, experience, and intelligence in determining this question. Eckhardt v. Hanson, *supra;* Carlson v. Sanitary Farm Dairies, Inc. 200 Minn. 177, 273 N. W. 665; Squillace v. Village of Mountain Iron, 223 Minn. 8, 26 N. W. (2d) 197.

■ The first incident urged as misconduct concerned a statement to the court made by defendants' counsel prior to commencement of trial outside the jury's presence as follows:

"Mr. Murnane:

"* * * plaintiff father has informed the defendant that he knew he had a lot of money and * * * was going to do everything he could to punish the defendant for not visiting the child in the hospital. And I felt that if that is a motive behind this lawsuit, the court should be informed of it, and either Counsel or the Court or both of them in some manner attempt to point out to the father that that has no place in the lawsuit and * * * is not an issue and should not be an influencing factor in determining what attitude should be taken toward the settlement of this matter."

Plaintiff's counsel then advised the court as follows:

"Mr. Wallace:

"* * * I am totally unaware of any such motive as he said here. * * *

"* * * I don't know of anything that can be done except to proceed to trial as our clients expect us to do, and I don't feel that the remarks that have been made—certainly they are not helpful to our case, and may well be prejudicial to it as it develops. For that reason, I object to those remarks as not being justified under the circumstances and being prejudicial at this point. I don't attack Mr. Murnane's private motives for making them, in anyway do I wish to reflect on that. I assume his motives to be good. I simply object to the effect of the remarks.

\* \* \* \* \*

"The Court:

"As far as the remarks on the motive of the father of the child is concerned, it won't be, won't have anyplace in the trial except in its proper place."

We are of the opinion that the foregoing did not constitute prejudicial misconduct to the extent of requiring a new trial. The statements were

made pursuant to an effort to effect a settlement of the controversy. Defendant's counsel implied that in rejecting the offer plaintiff may have been motivated by personal animosity. He sought to induce the court to ascertain whether the offer might be acceptable if animosities were forgotten. The statements were not made in the jury's presence, and plaintiff's counsel then made it clear he ascribed no improper motives in connection therewith. The court stated definitely that the statements would have no place in the trial, and we fail to find anything to indicate that in the conduct thereof any prejudice resulted to plaintiff therefrom. We cannot hold that the court abused its discretion in deciding that this incident was not so prejudicial as to constitute misconduct requiring a new trial. Brecht v. Town of Bergen, 182 Minn. 603, 235 N. W. 528; Wyatt v. Wyett, 200 Minn. 106, 273 N. W. 600.

■ The second claim of misconduct relates to the cross-examination of plaintiff Claude F. Pelzer. He was asked:

"By Mr. Murnane:

"Q   Did you ever at anytime * * * say to him [defendant] in words or in substance, you were drunk at the time of this accident?

"A   No, sir, I never did."

Later in plaintiff's counsel's cross-examination of defendant the following took place:

"By Mr. Wallace:

* * * * *

"Q   Mr. Lange, are you going to tell us in this court room that Mr. Pelzer said that he was drunk at the time of this accident?

* * * * *

"Mr. Murnane:

"May Counsel's attention be called to the fact that in submitting the question to the witness, he used in place of defendant's name the name of his own client?

"By Mr. Wallace:

"All right, I misspoke, and I will rephrase the question * * *."

Plaintiff now asserts that "the court erred in permitting Mr. Murnane to pursue this prejudicial line of inquiry" and that "Apart from the

prejudicial nature of the question, Pelzer's sobriety or lack of it at the time of the accident was wholly immaterial, for he was undeniably not at the scene when it happened." It seems clear that the question asked was whether Mr. Pelzer had at one time after the accident accused defendant of being drunk when it happened and that plaintiff's counsel was well aware of the true meaning and intent of the question. After the court called attention to his misstatement thereof, he replied "All right, I misspoke, and I will rephrase the question * * *." Thereafter he asked for the exact conversation, and it was related by defendant. We have no doubt that the jury and everyone present, including plaintiff's counsel, understood the purport of the question and were not misled in any particular thereby. It cannot be held that there was any misconduct in such procedure. Brecht v. Town of Bergen, *supra;* Ostrowski v. Mockridge, 242 Minn. 265, 65 N. W. (2d) 185, 47 A. L. R. (2d) 733.

■ The final incident claimed to have constituted misconduct relates to the closing arguments in which defendant's counsel stated:

"* * * One of the closing questions of the trial * * * was, when, after the impact, did you apply your brakes? Now, members of the jury, that's just not being fair. * * * It's not trying to bring out the truth. It's trying to, by trick questions, get somebody to say that they know, if they have a second to reflect over it, is not the fact. * * * This isn't a criminal matter * * *. But many times, many times, the socalled lawyers of criminal cases do these sort of things. Now, if Counsel wants to do it, we can't control that. It's perfectly proper. If Counsel in his association with Mr. Goff and some of these men who do quite a bit of criminal work want to do that, there's no way to avoid it. * * *

\* \* \* \* \*

"* * * Before we came into court, members of the jury, both Mr. Wallace and his entire group of associates, Mr. Syd Goff, Mr. Mel Silver, and all of the folks down there who wanted to, had access to the same information that we did."

At the close of the argument and pursuant to stipulation that objections should be made at that time, plaintiff's counsel took exceptions to the foregoing as follows:

"Mr. Wallace:

"I take exception to the general comments of Counsel regarding the methods that were used in the trial of the case, particularly his reference to criminal lawyers, that it is immaterial to any issues in this case, designed for prejudice and only designed for prejudice, and claim that it is prejudice and designed to be prejudicial."

Thereafter in his closing argument plaintiff's counsel emphatically challenged the above comments and answered each in detail. At no time, however, did he move for mistrial or request corrective instructions. In its final charge the trial court instructed the jury that it must depend upon its own recollection of the evidence rather than upon statements of counsel which did not coincide therewith and that it should subject the evidence to scrutiny and return a verdict thereon free from prejudice, bias, or sympathy. When the charge was completed, the court invited suggestions from counsel and asked if there had been any omissions. In response thereto plaintiff's counsel stated that the court's instruction that the age of a minor had nothing to do with the violation of a statute was not clear and that the language used in submitting the emergency rule left some doubt in his mind. Nothing whatever was said relative to the objectionable comments of defendant's counsel.

We do not condone the tactics adopted or statements made by defendant's counsel in his closing argument as above described. They were entirely uncalled for and had nothing whatever to do with the issues in the litigation or the evidence submitted in connection therewith. Obviously, they were designed to create bias against plaintiff, and had not the plaintiff's counsel proceeded with the trial and undertaken to answer such statements in his closing argument, they would be deemed reprehensible to the extent of requiring a new trial. His general objection that the remarks were prejudicial did not convey to the court that he wished an order for a mistrial or desired corrective instructions. After his closing argument and prior to the court's instructions, he made no further requests in connection with this matter. When the charge was completed and the court invited suggestions from counsel and inquired as to omissions, again nothing was said with reference to the objectionable statements.

We have repeatedly held that where a party fails to request corrective instructions before the jury retires, he may not later claim that the statements of opposing counsel in the closing argument constituted misconduct, justifying a new trial, Beebe v. Kleidon, 242 Minn. 521, 65 N. W. (2d) 614; Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 64 N. W. (2d) 530; Eilola v. Oliver Iron Min. Co. 201 Minn. 77, 275 N. W. 408; Flemming v. Thorson, 231 Minn. 343, 43 N. W. (2d) 225; Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. (2d) 433, 58 A. L. R. (2d) 921, unless such statements were so flagrant and reprehensible that the court should have acted thereon upon its own motion. Beebe v. Kleidon, 242 Minn. 521, 65 N. W. (2d) 614; Patton v. Minneapolis St. Ry. Co. *supra.*

Here, in view of the procedure adopted by plaintiff's counsel, the trial court might reasonably assume that such counsel was satisfied that, in his closing argument, he had answered the objectionable remarks of his opponent to the extent that the jury would be able to determine the issues without prejudice and without the need of any admonitions from the court. Certainly, at this stage in the proceedings, in the absence of any motion therefor, the court would not be justified in assuming that plaintiff was desirous of an order for mistrial. Accordingly, it cannot be held that the trial court abused its discretion in denying the subsequent motion for a new trial based upon the occurrences described.

Affirmed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.