**STATE of Minnesota, ex rel. Pamela J. PULA, Appellant,**

**v.**

**Mark BEEHLER, Respondent.**

**No. C6-84-1484.**

Court of Appeals of Minnesota.

March 26, 1985.

Review Denied June 4, 1985.

Alan R. Felix, Asst. Co. Atty., Bemidji, for appellant.

James W. Haskell, Bemidji, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

The State of Minnesota commenced a paternity action against respondent Mark Beehler alleging that Beehler was the father of Pamela Pula's child. A jury returned a special verdict for Beehler. The trial court denied Pula's motion for judgment notwithstanding the verdict and, alternatively, for a new trial. We affirm.

## FACTS

On July 23, 1981, appellant Pamela Pula, then age 17, and respondent Mark Beehler then 15 years old, engaged in their sole act of sexual intercourse. No birth control devices were used. According to Pula, her last menstrual period was July 11. On April 19, 1982, Pula gave birth to Matthew. There was testimony by Mark's mother that the parties have the same great, great grandmother to which there was no objection or cross-examination.

## ISSUES

1. Was the evidence so overwhelmingly in favor of Pula so as to warrant the granting of a judgment notwithstanding the verdict?

2. Was the evidence of a common great, great grandmother surprise evidence which would warrant the granting of a new trial?

3. Was the medical evidence produced by Pula after the trial, material evidence, newly discovered, that would warrant the granting of a new trial?

4. Did the trial court commit prejudicial error in allowing Beehler's counsel to question Pula about her sexual affairs during a time period broader than the critical period of conception?

5. Was it improper, prejudicial error for Beehler's counsel to question and make comment about Pula's general reputation for chastity?

6. Was the special verdict so contrary to the greater weight of the evidence so as to warrant the granting of a new trial?

## ANALYSIS

### I

■ Pula argues the trial court erred in denying her motion for a judgment notwithstanding the verdict. An order denying a motion for judgment notwithstanding the verdict is a non-appealable order.

### II

■ Pula contends the trial court should have granted a new trial because evidence of a common blood relationship between the parties (a great, great grandmother) was surprising and, therefore, requires a new trial.

While it is true a new trial may be granted for "[a]ccident or surprise which could not have been prevented by ordinary prudence." Minn.R.Civ.P. 59.01(3), Pula made no motion for a continuance and made no claim of surprise at trial. "Having failed to object properly at trial, plaintiffs may not enlarge their objection for the first time upon a motion for a new trial, or upon appeal, and thus have waived any claim of error." *Poppler v. O'Connor*, 306 Minn. 539, 541 n. 1, 235 N.W.2d 617, 619 n. 1 (1975) (citations omitted).

### III

Pula next argues the trial court should have granted a new trial because of newly discovered evidence regarding the impact of a common ancestor on the reliability of Beehler's blood test results. This evidence was in the form of medical literature and a War Memorial Blood Bank opinion allegedly refuting any claim that the existence of a common great, great grandmother casts doubt on the validity and reliability of Mark's blood test results. At the time the evidence regarding the common ancestor was introduced, counsel for Pula made no objection nor did he move for a continuance in order to refute the evidence.

■ A new trial may be granted on the basis of "[m]aterial evidence, newly discovered, which with reasonable diligence could not have been found and produced at the trial." Minn.R.Civ.P. 59.01(4); *see Maras v. Stilinovich*, 268 N.W.2d 541, 545 (Minn.1978). Granting a new trial on this ground is largely addressed to the discretion of the trial court. *Hertz v. Hertz*, 304 Minn. 144, 146, 229 N.W.2d 42, 44 (1975). "Also, the evidence must be such as will likely affect the outcome of the case." *Swanson v. Williams*, 303 Minn. 433, 436, 228 N.W.2d 860, 862 (1975).

Pula has not met her burden of showing that the evidence could not have been found and produced at trial. Moreover, it has not been shown that this evidence would have a material affect on the outcome of the case. Notwithstanding the evidence of a common ancestor, the jury's verdict is supported by substantial evidence.

### IV

■ Next Pula argues it was prejudicial error to allow Beehler's counsel to inquire into Pula's sexual affairs during a period of three months before and after July 23, 1981.

Pula testified she had no sexual relationships within that 6 month period. Mark testified she had told him she had intercourse with another person a short time prior to the act of intercourse with him. Prejudice hasn't been shown. A three month period before and after the alleged sexual act is not too remote. *Compare County of Ramsey v. S.M.F.*, 298 N.W.2d 40, 42 (Minn.1980) (interrogatories asking for information regarding sexual activity over a 5-year period were too broad).

### V

■ Pula argues it was prejudicial for Beehler's counsel to question and comment about Pula's general reputation for chastity. Counsel for Pula never objected to this line of questioning and, therefore, effectively waived any right to raise this issue on appeal.

Ordinarily, expression of satisfaction with the charge by counsel and failure to call the court's attention to errors before the jury retires would suggest that errors complained of were not deemed to be prejudicial by counsel at the time. *Jurgensen v. Schirmer Transportation Co.*, 242 Minn. 157, 166, 64 N.W.2d 530, 536 (1954) (quoting *Eilola v. Oliver Iron Mining Co.*, 201 Minn. 77, 80, 275 N.W. 408, 409 (1937)).

## VI

 Lastly, Pula argues that the trial court should have granted a new trial because the verdict was not justified by the evidence. Minn.R.Civ.P. 59.01(7). The test for granting a new trial is as follows:

> A new trial should not be granted unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment.

*LaValle v. Aqualand Pool Co.*, 257 N.W.2d 324, 328 (Minn.1977).

Mark's testimony of Pula's admission of their sexual conduct and of her sexual intercourse not long before July 23, 1981, if considered to be credible, is sufficient to support the jury's verdict. As Justice Mitchell once stated:

> [I]f [the mother] had exposed herself to the embraces of other men at or about the time she became pregnant, she had placed it out of her power, or that of the jury, to say who was the father of the child.

*State v. Allrick*, 61 Minn. 415, 418, 63 N.W. 1085, 1086 (1895).

The blood test only established that Beehler could have been the father, not that he was, in fact, the father. This type of test is only one factor to be considered and weighed by the jury. The results of the test were submitted in written form, and there was no expert testimony regarding its accuracy or even whether proper procedures were followed in the administration of the test.

Moreover, medical evidence introduced at trial showed that conception occurred more than two weeks before the one act of intercourse between the parties. An obstetric sonogram performed on January 22, 1982, showed a gestation period of approximately 28.5 weeks. This results in a date of conception of approximately July 6, 1981. Pula's medical records show that she was examined on April 16, 1982, three days before birth. At that time, the doctor estimated the pregnancy to be at 41 weeks. This sets the date of conception at approximately July 3, 1981, some twenty days before the date on which the parties had intercourse.

## DECISION

Affirmed.