## AMANDA BECKER v. NORTHLAND TRANSPORTATION COMPANY AND OTHERS.[1]

No. 31,146.

June 18, 1937.

[1]Reported in 274 N. W. 180, 275 N. W. 510.

*Austin & Wangensteen,* for appellant.

*Stone, Manthey & Montague* and *Cobb, Hoke, Benson, Krause & Faegre,* for respondents Northland Greyhound Lines, Inc. and Andrew Leviska.

*Hunt & Palmer,* for respondent R. Maturi.

LORING, JUSTICE.

In a suit by the plaintiff as administratrix to recover for the death of her husband against the Northland Transportation Company, Northland Greyhound Lines, Inc., Andrew Leviska, and R. Maturi, the defendant Maturi had a directed verdict, and the Greyhound company and Leviska, the driver, had a verdict in their favor from a jury, the case having been dismissed as to the Northland Transportation Company.

The collision in which plaintiff's intestate was killed occurred on the morning of January 18, 1935, at about 9:10 a. m. at a point approximately seven miles north or northeast of Virginia on highway No. 169, which extends toward Tower. Plaintiff's intestate was riding with another man in a Ford truck belonging to the Minnesota Power & Light Company, for which company they both worked. They were going northeasterly on company business. At a point about seven miles northeast of Virginia, where smoke from some brush fires obscured their vision, they collided with the Greyhound company's bus, driven by Leviska. Both men in the power and light company's truck were instantly killed and the truck demolished.

In 1934 the defendant Maturi had contracted with St. Louis county to grade that portion of highway No. 169 where the accident occurred. His contract required the removal of brush from the right of way. The contract left it discretionary with Maturi to burn the brush or haul it away. He chose to burn it but could not safely do so in the fall of 1934 and awaited the coming of snow in order to burn it with safety. He then engaged John Stokke to burn the numerous piles for the sum of $30, Stokke to furnish his own kerosene and transportation. Maturi retained no control over how or when the brush should be burned. Stokke engaged another man to assist him and burned part of the brush piles on January 17. Such wind as there had been on the 17th was from the northwest, and Stokke, who was called by the plaintiff, testified that the wind was still from that direction when they started burning the brush piles about 7:30 a. m. on the 18th. There was a heavy blanket of snow on the ground and on the brush piles, and that upon the brush

piles had to be removed before the fires were started. On the morning of the 18th there remained to be burned some eight or ten piles of brush on the southeasterly side of the road, and fire had been set to all of these prior to the time of the collision. There is a dispute in the evidence, and the jury might have drawn the conclusion that the wind changed prior to the time when the last fires were set. At any rate, the last fire was set shortly before the collision occurred, and at the time of the collision the wind was carrying the smoke across the highway. Entering from the northeast, the smoke from the first two or three piles was not so dense as from the fourth pile. The driver of the bus could see the smoke for half a mile before he entered it. From the evidence the jury might well have believed that he then slowed down his bus and put on his headlights; that he kept on his own side of the road and was going not to exceed 15 or 20 miles per hour as he passed through the smoke. The piles of brush were from 30 to 50 feet apart, and they were about 30 feet from the center of the highway so that the smoke was not continuously dense but there were spaces between the smoke clouds which, if not clear of smoke, were of much less density than the smoke opposite each pile. The wind was gusty so that the density and drift of the smoke varied. While the bus was going at between 15 and 20 miles per hour between the third and fourth pile, the Ford truck of the power and light company suddenly appeared to the bus driver out of the dense smoke from the fourth pile. It was coming very rapidly (estimated at 40 miles per hour) toward him in the middle of the highway astride the center line. Before its entry into the smoke the truck had been seen traveling fast (at least 40 miles per hour) and in the middle of the road. The collision occurred instantaneously. The bus driver was engaged in preventing one of the passengers from going through the windshield, his foot was shaken from the brake pedal, the steering tie rod was broken, and he did not again get his foot on the pedal until the bus had about reached the point where it stopped in a snowbank. The truck rolled off opposite the fourth brush pile, counting from the northeast.

■ Quite obviously the bus driver's negligence was a question for the jury. Reasonable minds might conclude that a man of ordinary prudence under the circumstances might have undertaken to do just what he did. He might have concluded that by slowing down to the speed of 15 or 20 miles per hour and turning on his lights and keeping to the right of the center line of the road he could pass through the smoke with reasonable safety. Salera v. Schroeder, 183 Minn. 478, 237 N. W. 180. He was entitled to assume that the driver of any car coming from the other direction would likewise slow down, put on its lights, and keep to his own side of the road. The smoke from the first two or three piles was not so dense as to preclude passage through it in safety; but, having driven into the smoke or between the columns of smoke, a man of ordinary prudence might conclude that it was safer to go on than to stand still; at least a jury might have so found and evidently did find so in this case. In our view, the 15-mile statute, 1 Mason Minn. St. 1927, § 2720-4(4), relative to speed on curves and grades where the view is obstructed was not applicable, or, if applicable, its violation, if any, by the driver was as a matter of law not the proximate cause of the accident.

This case does not come within the rule laid down in Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42, where the atmospheric condition was clear, but is controlled by Tully v. Flour City C. & O. Co. 191 Minn. 84, 253 N. W. 22. The case of Salera v. Schroeder, 183 Minn. 478, 480, 237 N. W. 180, is authority for the defendants rather than for the plaintiff. In that case the collision occurred in a fog, and defendant was on the wrong side of the road. Plaintiff was in a car which was on the right side of the road. As to the driver of the latter car, this court said: "It is difficult to see therefore how negligence can be charged to the driver of that car." We are therefore of the opinion that the evidence is sufficient to sustain the jury's findings.

■ The trial court directed a verdict in favor of Maturi, the contractor. It was contended by Maturi that his contract with Stokke made Stokke an independent contractor. The evidence is clear and conclusive upon that point and relieves Maturi of liability unless

the subject matter of the contract was of such a character as to render its performance so ultrahazardous to the person and property of others that the exercise of the utmost care could not eliminate that risk. Restatement, Torts, § 427. We are inclined to the view that the burning of the brush was not such an ultrahazardous activity that the risk could not have been eliminated by the exercise of a high degree of care. It would have been practicable for those in charge of the situation to have made appropriate arrangements for traffic to be handled in such manner as to eliminate the risk of collision. Stokke may have been negligent in not making such an arrangement, but if his contract was an independent one, Maturi would not be liable.

Nor do we think the character of the work was of such a nature that no independent contract could be made with regard to it. Plaintiff contends that our holdings under the workmen's compensation act compel a finding that this was menial labor and not subject to an independent contract. In our opinion, this work was no more menial than any other part of the road construction work. The word "menial" in its true sense relates to domestic servants. Century Dictionary; Funk & Wagnall's Dictionary; Webster's International Dictionary. If one were to contract for the clearing of a farm by the acre or by the entire tract or as a separate part thereof, for the burning of the brush for a lump sum as was done here, it could not be called menial in its true sense. Hence our cases under the workmen's compensation act are not in point.

■ The plaintiff took exception to the court's charge that the jury must find that the negligence, if any, of the defendants was the proximate cause of the accident and that by that it meant the immediate direct cause without the interposition of any other sufficient cause. Under the circumstances of this case, where the evidence was sufficient to sustain a finding either way on the negligence of the bus driver and where there was abundant evidence to sustain the finding of the interposition of an efficient cause sufficient to insulate the bus driver's negligence, if any, in the form of the negligence of the driver of the power and light company's truck, we think the charge was justified and stated the law. The court

also charged the jury that if they found that the negligence of the power and light company was the sole proximate cause of the accident then they could not find a verdict against the defendants bus company and driver. This charge was, of course, obviously sound.

The court also charged that if the jury found that the bus driver was negligent and his negligence a proximate cause of the accident and if they did not find that the power and light company was negligent and its negligence the sole proximate cause of the accident their verdict should be in favor of the plaintiff. This was equivalent to charging the jury that if the negligence of the power and light company and that of the bus driver concurred in producing the accident, their verdict should be for the plaintiff.

The court also refused to charge, at the request of the plaintiff, that it was the duty of the bus driver when the bus approached the smoke to exercise reasonable care in keeping the bus under proper control, taking into account all of the circumstances and conditions existing. It would have been preferable if the court had given this request, but in the light of its general charge as to what constituted negligence we would not reverse for failure to give this request. We think from the tenor of the general charge that the jury fully understood that the bus driver was required to exercise such care as the presence of the smoke would dictate to an ordinarily prudent person. ·

■ Nor do we think that the matter of workmen's compensation was at all prejudicial to the plaintiff in view of the court's charge. In fact the plaintiff requested that the court tell the jury why she could not sue the Minnesota Power & Light Company. The court fully advised the jury that it was not to take into consideration the fact that the plaintiff might be entitled to compensation from her deceased husband's employer.

The order appealed from is affirmed.

UPON REARGUMENT.

On October 22, 1937, the following opinion was filed:

LORING, JUSTICE.

This court granted a rehearing on the question of independent

contractor as it relates to the defendant Maturi. It is the plaintiff's contention that Maturi is liable for the negligence of Stokke, even though the contract was an independent one, because Maturi should have realized that the burning of the brush *necessarily* created conditions involving an unreasonable risk to others unless special precautions were taken; and that he failed to provide in the contract, or in some other manner, that such precautions should be taken. The plaintiff also contends that Maturi did not exercise reasonable care in selecting Stokke as an independent contractor.

We are of the opinion that the record shows no negligence upon the part of Maturi in selecting Stokke as a contractor, and the plaintiff can point to no evidence of unsuitability on Stokke's part, except his negligence in the matter here complained of. For anything the record shows, Stokke may have been the most careful of individuals prior to the instance complained of. Of course the burden was on the plaintiff to show Maturi's lack of care in selecting Stokke.

Nor can we agree with the plaintiff that the work contracted for was necessarily so hazardous to the public that the contractor must provide either in the contract or otherwise that special precautions be taken. It appears to us that ordinary care was all that was required of Stokke, and that its exercise would have protected the public from the hazards due to the smoke. The evidence that Stokke was guilty of negligence is compelling. But the piles of brush were far enough from the traveled part of the highway so that the burning of the piles while the snow was on the ground could only result in hazard to the traveling public in the event the smoke was blown across the highway in such quantities and so close to the surface of the highway as to interfere with visibility to such an extent as to prevent a person, driving at a reasonable rate of speed under the circumstances, from keeping to the right of the center line. That hazard was obvious to any person of the most ordinary intelligence in case the wind should blow the smoke across the highway in such manner, and ordinary care would dictate that Stokke and his helper should then have devoted their energies to flagging the traffic through the smoke in such manner as to prevent

the danger of collision. Of course the brush should have been burned when the wind was off the road, as it had been on the previous day, or it should have been burned one pile at a time if the wind were not favorable. The precautions which could have been taken are too obvious to require discussion. In our opinion, the failure to take such precautions was purely collateral to the work contracted to be done, and the hazards created by that work were not necessarily the result of the contract, but were as a matter of law due to the negligence of the independent contractor in the performance thereof. Robbins v. Chicago City, 4 Wall. 657, 679, 18 L. ed. 427; City & S. Ry. Co. v. Moores, 80 Md. 348, 30 A. 643, 45 A. S. R. 345; Callahan v. Salt Lake City, 41 Utah, 300, 125 P. 863. Quite obviously there was no special skill required of Stokke, and the plaintiff does not contend that there was. In fact, she does contend that the work was of such simple character that it might been performed by a child and that hence it was menial. The latter feature was discussed in our principal opinion.

We adhere to our former decision.

GALLAGHER, CHIEF JUSTICE (dissenting in part).

I agree that there was no evidence in this case from which it could be found that the defendant Maturi was negligent in the selection of Stokke as a subcontractor. Upon the other question in the case, that is, as to whether the work was of such a hazardous nature that Maturi should in his contract with Stokke have required the latter to take extra precautions to prevent injury to persons using the highway adjacent to the place where the brush was to be burned, I feel that there was an issue and that the trial court should have submitted that issue to the jury. The highway is a much traveled one. Anyone burning brush along it should have known that the wind was liable to change at any moment. It is difficult to conceive of a highway hazard greater than attempting to drive through smoke. It could hardly be expected that the traveling public park their cars along the highway until the smoke cleared away. When Maturi let the contract to Stokke to burn the brush he should have known of the unusual hazard about to be

created and should have required Stokke to take extra precautions to guard against the dangers it created. In any event, the issue as to whether the work was so hazardous that the contractor should have required the subcontractor to take special precautions to prevent injury was for the jury.

PETERSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Chief Justice Gallagher.

MR. JUSTICE STONE took no part in the consideration or decision of this case.