PETER PURDES v. RALPH MERRILL AND ANOTHER.
CLEMENT G. JOHNSON, APPELLANT.

128 N. W. (2d) 164.

May 1, 1964—No. 39,041.

James H. Colwell, for appellant.

Roy A. Schwappach, for plaintiff respondent.

MURPHY, JUSTICE.

This is an appeal from an order denying judgment notwithstanding the verdict or a new trial in an action arising from an automobile accident. The plaintiff had a verdict against both the defendants. Only the defendant Johnson appeals. He claims (1) that the record establishes he was free from negligence as a matter of law; and (2) that he was prejudiced by an improper argument of plaintiff's counsel to the jury.

The accident from which the litigation arose occurred on April 16, 1960, at 1 a. m. at the intersection of Osseo Road and 47th Avenue North in the city of Minneapolis. Osseo Road runs northwest and southeast. It is intersected on the west by 47th Avenue which runs east and west. Proceeding northwesterly on Osseo Road, as the parties in this case were doing, there is about a 45-degree turn to the left into 47th Avenue North. Osseo Road is about 46 feet wide, enough for two cars to travel abreast to the right of the center if no cars are parked, as ap-

·pears to have been the case on the night in question. No centerline was marked on Osseo Road. The streets were level and dry.

Defendant Clement Johnson was going northwest on Osseo Road with plaintiff, Peter Purdes, as a passenger. Johnson was followed by one Godfried Carland, who in turn was followed by the codefendant Ralph Merrill. Johnson prepared to make a left turn into 47th Avenue. As he did so his automobile was struck from the rear by the Merrill car which had passed Carland and was attempting to pass Johnson in the intersection. The collision occurred as the front part of the Johnson car had entered the intersection. Johnson's passenger was injured and brought suit against both Johnson and Merrill.

At the outset it should be noted that there was no question of Merrill's negligence. At the time of the accident he was exceeding the speed limit and attempting to pass the car ahead of him in an intersection contrary to law. The only issue in the case was whether Johnson was also negligent. At the trial it appeared that Merrill claimed Johnson was negligent in making an abrupt left turn as he approached the intersection; that he failed to keep a proper lookout; and that he failed to signal for the left turn.

The claim that Johnson contributed to the accident by making a sudden turn to the left as he approached the intersection may be disposed of with brief comment. Merrill testified that Johnson's turn was sudden and abrupt but conceded by his testimony that a preliminary move which Johnson made to the center of the road should have indicated to him, if he had thought about it, that Johnson was about to make a turn at the intersection. Merrill, however, was preoccupied with other problems at the time of the accident. He had received a call at his place of employment that his expectant wife's time had come and he was rushing home to be with her.

■ Merrill's claim that Johnson failed to keep a proper lookout also hangs by a thin thread. It is true that at the time and place of the accident Johnson was not only required to observe oncoming traffic, but traffic to the sides and rear as well. Alex v. Jozelich, 248 Minn. 27, 78 N. W. (2d) 440; Kuether v. Locke, 261 Minn. 41, 110 N. W. (2d) 539. Johnson was governed by Minn. St. 169.19, subd. 1(2),

which provides that left turns shall be made from "that portion of the right half of the roadway nearest the center line thereof * * *." This provision comprehends that the left turn shall be made from this position so as to give the right-of-way to traffic coming from the opposite direction.

From the record it appears that Johnson looked to the rear some 50 to 100 feet before he entered the intersection. At that point he saw Merrill in a direct line behind him, about 100 feet back, and Carland about the same distance back but further to the right. Having made this observation, he had a right to assume until the contrary appeared that he could direct his attention to the problem of negotiating the left turn without hazard from the following car and that the following car would exercise due care, by complying with the applicable provisions of law. Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391; Becker v. Northland Transp. Co. 200 Minn. 272, 274 N. W. 180, 275 N. W. 510.

On the other hand the conduct of Merrill under the circumstances was governed by § 169.18, subd. 5(b)(2), which provides:

"(b)   Except on a one-way roadway, no vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left half of the roadway under the following conditions:

*    *    *    *    *

"(2)   When approaching within 100 feet of any underpass or tunnel, or when approaching within 100 feet of or traversing any intersection or railroad grade crossing."

In Gustafson v. Schilt, 263 Minn. 294, 116 N. W. (2d) 557, and Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758, we discussed the mutual obligations and responsibilities which rest upon respective drivers of vehicles proceeding in a line of traffic and pointed out that no hard-and-fast rule could be laid down which could apply in every situation.

We have grave doubt as to the correctness of the trial court's determination that under all of the circumstances there was a fact question as to negligence on the part of Johnson. The situation presented by the record does not indicate that Johnson owed a duty to Merrill ex-

cept to use the road in the usual way, in keeping with the laws of the road, and that he had a right to assume that Merrill had his vehicle under such control as not to interfere with the free use of the intersection for the purpose of making a left-hand turn.[1]

The claim that Johnson was negligent in failing to signal for a left-hand turn finds doubtful support in the record. This claim of negligence is based upon negative evidence. Merrill testified that he did not see rear signal lights operating on the Johnson car prior to the accident. We have recognized that such evidence has probative value. In Polchow v. Chicago, St. P. M. & O. Ry. Co. 199 Minn. 1, 4, 270 N. W. 673, 674, we noted that testimony of this character is sometimes the only type available, and to hold it insufficient would deprive a litigant of the means of proving negligence in regard to the "sounding of audible signals." The broad use of this kind of evidence was approved of as it related to the nonexistence of a locomotive warning in Cotton v. Willmar & Sioux Falls Ry. Co. 99 Minn. 366, 109 N. W. 835, 8 L. R. A. (N. S.) 643; Doll v. Scandrett, 201 Minn. 316, 276 N. W. 281; Willett v. G. N. Ry. Co. 154 Minn. 10, 191 N. W. 260; Perkins v. Chicago, M. & St. P. Ry. Co. 158 Minn. 184, 197 N. W. 758; and N. P. Ry. Co. v. Haugan (8 Cir.) 184 F. (2d) 472.

In the more recent case of Forde v. N. P. Ry. Co. 241 Minn. 246, 252, 63 N. W. (2d) 11, 16, we pointed out that negative evidence must be something more than equivocal evidence of the nonexistence of a fact, and there emphasized that such evidence has probative value when it is "based upon an attentive and purposeful observation by a credible witness in full possession of his faculties."

Here the testimony as to the absence of rear turn signals on the Johnson car is so vague as to be of doubtful value. Both the plaintiff and Johnson stated affirmatively that the signal lights were functioning. The mechanism which controlled the lights was in good order, and the instruments on the panel in the front of the Johnson car showed that they were working. None of the other witnesses testified that the turn signals were not operating. There was this testimony from defendant Merrill:

---

[1] 8 Am. Jur. (2d) Automobiles and Highway Traffic, § 768; Gosma v. Adams, 102 Fla. 305, 135 So. 806, 78 A. L. R. 1193.

"Q. You are absolutely sure that [Johnson's] left turn signal was not on, is that correct?

"A. I don't know if it was on.

\* \* \* \* \*

"Q. Did you observe any signal light on the rear of the Johnson car?

"A. No, I didn't. I'm not sure, I'm not sure."

At another point the following occurred:

"Q. All right. And you do not know for sure whether or not there were any turn signals operating on the Johnson car, isn't that correct?

"A. I didn't see any."

It seems to us that under the broad rule in the Cotton case the testimony here as to the absence or failure of rear turn signal lights on the Johnson car is of doubtful probative value. The nature of the testimony is neutral rather than negative.

The next point we consider is the claim of defendant Johnson that the plaintiff's attorney was guilty of prejudicially improper conduct in his final argument. In a resourceful argument, the plaintiff's attorney argued to the jury that both Johnson and Merrill were liable and that a verdict should be returned against both of them. In discussing the issue of damages, he said:

"\* \* \* As I say, this is merely compensatory law; it isn't punishment. I feel that I'll ask you people for a fair amount in the amount of $40,000.00 against both of these defendants. Anything more and you're punishing *personally* either Mr. Purdes—or Mr. Johnson or Mr. Merrill. But I think you have to find against both of them and I think $40,000.00 is the top award you should bring in.

"You may say, 'Well, that isn't enough.' And it may not be. I think that you could justify easily sixty to seventy-five to possibly even up to a hundred thousand dollars for what Mr. Purdes has here." (Italics supplied.)

The trial court in a helpful memorandum, in which he fully expressed his views, recognized the impropriety of this argument and said:

"The use of the word 'personally' * * * in the foregoing quotation was wholly improper. There was no justification for its use and plaintiff's counsel is admonished for having used that word in that context."

He concluded, however, that the remark was not so prejudicial as to warrant the granting of a new trial. He was of the view that insinuations, if any, contained in the argument as to insurance coverage could not be prejudicial since the jury knew from questions asked on the voir dire that there were two insurance companies involved.

We have discussed in numerous cases the impropriety of referring to the subject of insurance coverage by counsel in arguments to the jury. Anderson v. Enfield, 244 Minn. 474, 70 N. W. (2d) 409; Olson v. Prayfrock, 254 Minn. 42, 94 N. W. (2d) 540; Ostrowski v. Mockridge, 242 Minn. 265, 65 N. W. (2d) 185, 47 A. L. R. (2d) 733; Odegard v. Connolly, 211 Minn. 342, 1 N. W. (2d) 137; McKeown v. Argetsinger, 202 Minn. 595, 279 N. W. 402, 116 A. L. R. 398. We agree with the trial court that it is a fact of life that jurors know that only the "wholly irresponsible" do not carry liability insurance (Odegard v. Connolly, *supra*) and that the disclosure of insurance coverage during the course of the trial does not necessarily fault the record. Ordinarily, it is for the trial court to determine whether or not the effects of such disclosures are prejudicial.

However, it seems to us that the admitted impropriety of the argument is a circumstance to be considered as an added infirmity to a weak record. The argument by indirection went beyond informing the jury that there was insurance coverage. The jury may have understood from the argument that an adequate recovery required that both defendants be held liable. The jury was told that the plaintiff's injuries justified a recovery up to $100,000 and that there was between the two defendants a sufficient coverage so that a "top award" of $40,000 would not "personally" hurt either of them. While we are reluctant to substitute our judgment for that of the trial court on the issues discussed, and while we must concede that we cannot say that the jury was improperly influenced, we are, nevertheless, persuaded that when the improper argument is viewed in the context of the record with its accumulated weaknesses, the result becomes suspect so as to require a

new trial in the interests of justice. 8 Am. Jur. (2d) Automobiles and Highway Traffic, §§ 1009, 1010; Annotation, 4 A. L. R. (2d) 788. Reversed and new trial granted.