ANDREW VANDERLINDE v. ANTHONY F. WEHLE.

144 N. W. (2d) 547.

July 29, 1966—No. 39,872.

478

 

*Berens, Rodenberg & O'Connor,* for appellant.
*Nemerov, Perl & Hunegs,* for respondent.

MURPHY, JUSTICE.

This is a negligence action in which defendant appeals from an order of the district court denying a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The defendant asserts that the verdict is excessive and that prejudicial error occurred during the trial when plaintiff's counsel allegedly suggested to the jury that insurance was involved.

The plaintiff, Andrew Vanderlinde, and the defendant, Anthony F. Wehle, are first cousins and operate neighboring farms. From the record it appears that at the request of defendant plaintiff went to the Wehle farm, taking with him a chain saw for the purpose of removing branches from a tree, which was located in the pasture. Wehle felt that he could not do the work alone. He told his cousin, "I can't go up that high * * * I get shaky * * * and I just daren't go up there." There were six branches to be removed, located at heights of from 9 to 16 or 18 feet. Everything went well until the last branch, which was the highest from the ground, and it was necessary to use both sections of a 32-foot extension ladder to reach it. This branch extended to the west and the tree leaned in the same direction so that the ladder was necessarily placed against the trunk on the east side of the tree. There was no place on the trunk where the top of the ladder could be securely fixed, and the plaintiff suggested that they tie the ladder to the tree with a log chain so that it would not move away. The defendant replied, however, that he did not think that would be necessary since he would hold the ladder firmly. Accordingly, the plaintiff climbed the ladder and began sawing the branch, assuming that the defendant would hold the ladder firmly in place. When the plaintiff cut through all but two inches of the branch, it began to fall, at which time he started down and, after having taken about two steps, he lost his balance and fell when the ladder began to fall away from the tree. He attempted to

hold onto the tree but was unable to do so. In his fall from a distance of about 15 or 16 feet, the plaintiff suffered a comminuted fracture of the right femur and a fracture of his right foot, accompanied by internal hemorrhaging at the site of these injuries. There is no serious dispute as to how the accident happened. There is this testimony from the defendant:

"Q. Okay. Now, when he climbed up the ladder he told you to hold on, is that it?

"A. Yes.

"Q. And you knew he was expecting you to hold on to the ladder, didn't you?

"A. Yes.

"Q. He was relying on you to hold on to that ladder, is that right?

"A. Yes.

\* \* \* \* \*

"Q. Now, when Andrew was up there and sawing did you stay, keep a hold of that ladder the whole time?

"A. For a while.

"Q. Then what did you do?

"A. Then I backed up. It was too doggone dirty.

"Q. What was happening to you? You mean the sawdust was falling on you?

"A. Yes, sawdust.

\* \* \* \* \*

"Q. Now, you didn't tell Andrew at any time that you weren't holding the ladder?

"A. No.

"Q. You didn't advise him while he was up there that you had stepped back and were just watching him?

"A. No.

"Q. He had no way of knowing that you weren't holding on to the ladder?

"A. No."

■ We first consider the asserted claim that the verdict for plaintiff in the sum of $28,000 was excessive. From the record it appears that the plaintiff at the time of the accident was 44 years of age, in good health, the father of four daughters, and operated a 76-acre farm. As a result of the fall, he was hospitalized for 71 days and incurred $2,102.65 hospital and medical expense. The physician who attended the plaintiff diagnosed his injuries as a severe comminuted fracture of the right femur and a fracture of the third and fifth metatarsal bones of the right foot. There was severe damage to the soft tissue and muscles, including tearing of the arteries and nerves of the leg, including swelling and severe pains. The physician concluded that there was a severe trauma and injury, the femur having "been pretty badly shattered." The plaintiff was placed in skeletal traction and an incision was made through the skin, tissue, and muscle, and a "Steinmann's pin" was hammered through the bone and weights were suspended from it. Because of profuse internal bleeding the plaintiff was given blood transfusions, and narcotics were administered to relieve his pain.

The accident has left the plaintiff with permanent injuries. The physician testified that in doing his work "he is going to have a lot of problem muscle aches and pains that most of us won't get, and a lot of spasm will come because of the decreased amount of blood supply * * *." The plaintiff has suffered a permanent 1½-inch shortening of the right leg. To compensate for this loss it is necessary for him to wear a prosthetic shoe, and the record indicates that even with the use of this shoe he will have a noticeable limp with continued discomfort. The physician testified that he was going to have difficulty in doing his work, which involves the usual type of farm labor requiring him to move about in uneven fields, planting and harvesting, climbing on and off tractors, milking cows, and doing other chores about the farm including the repair of farm machinery. The physician was of the opinion that great physical exertion would reflect itself in pain and stiffness the following day.

When the various elements of damage sustained by the plaintiff are considered, including a disfigurement, the permanent limitation of use of his leg and foot, and the future impairment of his earning ca-

pacity, we cannot say that the trial court erred in determining that the verdict was not excessive. It is well established in this state that the reasonableness of an award for damages can be appraised in the light of the elementary principle that plaintiff should be given neither more nor less than the sum which leaves him financially whole to the same extent as he would have been had no injury occurred. It seems to us that under the facts in this case the award is not excessive for the injury sustained. Brannan v. Shertzer, 242 Minn. 277, 64 N. W. (2d) 755; Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793; Hallada v. G. N. Ry. Co. 244 Minn. 81, 69 N. W. (2d) 673, opinion followed in Id. 245 Minn. 581, 72 N. W. (2d) 74, certiorari denied, 350 U. S. 874, 76 S. Ct. 119, 100 L. ed. 773.

■ It is next argued that prejudicial error occurred in remarks made by counsel for plaintiff when he interrupted defendant's closing argument. The incident as it appears in the record is:

"Mr. Rodenberg [counsel for appellant]: * * * it's a serious thing when you start reaching into one person's pocket and taking money from it—

"Mr. Hunegs [counsel for respondent]: Your Honor, I object to that comment of counsel.

"Mr. Rodenberg:—and giving it—

"Mr. Hunegs: Wholly improper, and I move that the jury be instructed to disregard that comment. He knows very well that that is not the case.'"

Prior to the judge's charge to the jury, the following occurred in chambers:

"Mr. Hunegs: I would say this, Your Honor, that I think counsel was improper in the one remark that he made in connection with this money coming out of the pocket.

"The Court: Oh, that is argument.

"Mr. Hunegs: I was wondering, just going to ask the Court if you could possibly give some sort of instruction just to clear that.

"The Court: I am not going to get into that because if I get into that then I virtually have to tell them implicitly, or impliedly, at least, that

it comes out of the pockets of an insurance company, and I am not going to become involved in this.

"Mr. Hunegs: All right. I purposely stayed away from it because I didn't know what to say without saying the same thing that you are just saying, and I thought perhaps something the Court might say, Your Honor.

"The Court: No, I think the best thing to do is leave it alone."

It is apparent that the statement objected to was prompted by the argument of defendant's attorney which invited the jury to infer that there was limited insurance or none whatever. We are not confronted here with a situation similar to that in Purdes v. Merrill, 268 Minn. 129, 128 N. W. (2d) 164, where we granted a new trial under circumstances where the jury was practically told of insurance liability limits in an argument, nor is this a case where an appeal to increase the damages is made by stressing the existence of insurance. In this case, the fact of insurance coverage was brought to the attention of the jury when they were examined as to their qualifications to serve. The statements to which the defendant objects added nothing to what the jury already knew. In any event the determination of the effect of the statement with reference to insurance is peculiarly within the discretion of the trial court who was in a better position to judge than are we the impact of statements made to or in the presence of the jury.

The other points raised do not require discussion.

Affirmed.