**Paul RUPPERT, et al., Appellants,**

v.

**David YAEGER, Respondent.**

**No. C5-87-485.**

Court of Appeals of Minnesota.

Oct. 20, 1987.

Paul M. Malone, Malone, Mailander & Mailander, Slayton, for appellants.

James H. Malecki, Gislason, Dosland, Hunter & Malecki, New Ulm, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

This negligence action was brought by Paul and Marilyn Ruppert against David Yaeger for injuries allegedly sustained in a boating accident. After the jury verdict, the Rupperts moved for a new trial pursuant to Minn.R.Civ.P. 59.01 (5) and (7) or, in

the alternative, for judgment notwithstanding the verdict. The trial court denied the Rupperts' motion and they appeal from its order and judgment. We affirm.

## FACTS

Paul and Marilyn Ruppert were passengers in a motorboat operated by David Yaeger on Lake Shetek in Murray County on September 8, 1985. The boat ran ashore during the early morning hours and struck a tree. The Rupperts brought a negligence action for injuries sustained in the accident. The jury found that Yaeger was negligent, but awarded less damages than recommended in argument by defense counsel.

The testimony submitted by both parties during the course of the trial, which ran three and a half days, was in sharp dispute regarding the nature and extent of the injuries and the income loss to the Rupperts. Both were hospitalized for two days after the accident.

Paul Ruppert, whose head hit the tree, was knocked out briefly and experienced nausea, dizziness and loss of balance. He submitted the testimony of an orthopedic surgeon, a chiropractor and a neurologist regarding his head and neck injuries. The chiropractor claimed that Ruppert would need treatments for neck stiffness every 4 to 6 weeks for the rest of his life. Yaeger presented a neurologist who stated that Ruppert's injuries were not as severe as alleged and emphasized that they were based mostly on subjective, non-measurable complaints, e.g., headaches, dizziness, etc. The jury awarded him $8,000 in stipulated medical expenses, $3,736 for disability, disfigurement, embarrassment and emotional distress, and another $1,000 for future pain, disability, etc.

Paul Ruppert is a commercial helicopter pilot who had just started a new business of aerial application of herbicides in spring 1985; he also farmed land with his father and brothers. After the accident, Ruppert was required to notify the FAA of his accident, and his pilot's license was canceled. It was reinstated by May 1, 1986, eight months later, with a medical limitation, which means that he must stop flying immediately if at any time in the future new symptoms or adverse changes occur.

Ruppert claimed to have lost all possible income from flying during those eight months (September through April). However, Yaeger submitted testimony showing that the majority of that "lost" time was non-spraying time in Minnesota. Gary Bipes, an experienced sprayer, testified that April 1 to September 15 constituted the spray season in Minnesota. The accident occurred September 8, and by May 1 Ruppert was flying again.

Ruppert said that he planned to seek work in Arizona or California during Minnesota's non-spraying season, earning three to four thousand dollars a month. He had no history of having done so and submitted no proof of an offer for such employment. The aerial spray expert testified that out-of-state work was very scarce and difficult to forecast because it is tied to unforeseeable weather conditions.

Ruppert claimed that after he returned to flying in May, he suffered such terrible headaches that he was forced to refuse offers for work, but he produced no records to substantiate this claim. His 1985 tax records showed a $2,300 loss related to his helicopter spraying business.

Ruppert said he did not bother to document incoming calls for work because "[he] didn't anticipate any legal action so [he] didn't keep any records." Yet Marilyn Ruppert submitted a photo of her injury taken within days of the accident, as suggested by their attorney. Paul Ruppert also kept a journal describing his pain from September 13 to the present.

In addition, Paul Ruppert testified that he suffered loss of income because he was unable to work on the farm. In 1985 Ruppert reported $2,300 in income from the farm; his attorney asked for $10,500 as the value of his lost farm labor based on yields for that year. The jury awarded $3,250 for total loss of earnings, nothing for future loss of earnings.

After the accident Marilyn Ruppert was hospitalized for two days because she too had been briefly unconscious. She has

some small scars on her hip, forehead and thumb. Her left thumb had been cut and, as a result, she experienced some numbness. Dr. Carlson called this a 6 percent permanent partial impairment of the upper extremity, or 4 percent of the whole person. Dr. Chalgren conducted an adverse exam and found the numbness to be a 2 percent permanent partial disability of the entire person. She claimed to have difficulty performing daily chores, buttoning clothes and affixing jewelry, yet it was established that she was right-handed.

Marilyn Ruppert tried to establish that she had left a new job picking mushrooms at the K & M mushroom plant because she was unable to use her hand correctly. She began the job in mid-November 1985, six weeks after the accident, and left the job by December 19, 1985. By deposition she testified that her sole reason for leaving her job, her first in four years, was her inability to perform the work due to the disability of her thumb. At trial, however, it was revealed that she had left work on the same day that she entered a chemical dependency program. She worked that morning, decided to enroll in Project Turnabout and left with no notice or explanation. Her subsequent correspondence to K & M showed that she had intended to return to her job.

The jury awarded her nothing for past loss of earnings, loss of future earnings and for future medical expenses. It did award her $1440.60 in stipulated medical expenses and $1,000 for pain, disability, disfigurement, embarrassment and emotional distress up to the time of trial.

The Rupperts contend the damages awarded were insufficient because in closing argument Yaeger's attorney argued that the jury, in awarding damages, should consider what is fair and equitable, not only for Marilyn Ruppert, but also "what is just and equitable for David Yaeger, the person who will have to pay any amount that you—." At this point the Rupperts' attorney objected and, although the trial court overruled the objection, no further reference to this topic was made.

## ISSUES

1. Did the jury award insufficient damages as a matter of law?

2. Did defense counsel argue improperly to the jury?

3. Did the trial court apply the correct standard in considering the motion for a new trial?

## DISCUSSION

The appellate court's review of the trial court's action is of limited scope. The decision to grant a new trial on the grounds of inadequate damages is committed to the trial court's sound discretion and will not be disturbed except under unusual circumstances:

> [T]his court has often held that the granting of a new trial on the grounds of inadequacy of damages lies within the discretion of the trial court and only where upon the record the damages awarded appear entirely inadequate will the court interfere.

*Collins v. Bridgland*, 296 Minn. 93, 96, 206 N.W.2d 652, 654 (1973).

A trial court has the broadest possible discretion in determining the adequacy of damages and the influence of passion and prejudice on a jury.

> The trial judge, who has the feel of the trial, is in the best position to know if justice is best served by submitting the evidence to another jury.

*Conover v. Northern States Power Co.*, 313 N.W.2d 397, 408 (Minn.1981).

### I

■ The Rupperts claim the damages awarded are insufficient as a matter of law because medical experts on both sides testified to a minimal permanent partial disability of Marilyn Ruppert's entire body. The testimony submitted by the experts for each party was in sharp dispute. Generally, the opinions of experts are only advisory. It is opinion, not demonstrable fact, that they are submitting. *State v. Shirk*, 253 Minn. 291, 293–94, 91 N.W.2d 437, 438–39 (1958). The 4 percent and 2 percent assessments of permanent partial disability

to Marilyn Ruppert, submitted by two different medical experts, is only opinion evidence, which the jury is entitled to accept or reject. When weighing an expert opinion, the jury may properly consider the knowledge and experience of the expert and the reasons given for that opinion. *See Hueper v. Goodrich,* 263 N.W.2d 408, 411 (Minn.1978). Only when the subject of expert testimony relates to a matter of science or specialized art may the expert opinion be conclusive. The medical evidence of Marilyn Ruppert's minimal permanent partial disability was the kind of evidence of scientific fact that a jury is at liberty to reject despite its uncontroverted character.

■ Yaeger cites two cases in support of his proposition. In *Olson v. Christiansen,* 230 Minn. 198, 200, 41 N.W.2d 248, 249 (1950), the court stated, "[a]pparently nothing, not even nominal damages, was awarded by way of general damages for plaintiff's pain, suffering, and prolonged partial disability." *Olson* is easily distinguishable from the present case in several ways: the unemployment claimed for three months was undisputed; there was no evidence of malingering; and the damages awarded did not even cover the plaintiff's out-of-pocket expenses for medical bills, car repair and employment loss. None of those facts apply to Marilyn Ruppert's situation.

In *Shearer v. Puent,* 166 Minn. 425, 429, 208 N.W. 182, 183 (1926), the court said, "If the damages are substantial, a nominal award will not do." In *Shearer* the verdict was for $1,812; after subtracting medical expenses and lost wages, that left $140.56 as compensation for pain and suffering. However, the injuries sustained in that case were clearly "substantial:"

> His collar bone was torn loose, his arm partially dislocated, ligaments around the shoulder were torn, and the scapula of the left shoulder was fractured. His eyesight is much impaired. * * * He was in the hospital about 9 weeks, and * * * suffered intense pain.

*Id.*

The extent of Marilyn Ruppert's injuries simply does not rise to the level of "substantial" as described in *Shearer.* We find that the figures offered by counsel in closing argument were merely suggestions to the jury should they find damages justified. Suggested figures are not to be construed as concessions unless they are so presented.

## II

■ The Rupperts argue that the reason they were awarded insufficient damages is that defense counsel's closing remarks constituted misconduct by arousing passion or prejudice on the part of the jury, i.e., inferring that Yaeger had no insurance coverage and would have to pay any damages himself.

Under Minn.R.Civ.P. 59.01, subd. 5, the trial court may grant a new trial on the basis of excessive or insufficient damages appearing to be given under the influence of passion or prejudice. This court recently stated:

> Questions of prejudicial misconduct with respect to insurance coverage disclosure are 'peculiarly within the discretion of the trial court [judge] who was in a better position to judge than are we the impact of statements made to or in the presence of the jury.'

*Anderson v. Rumsey,* 398 N.W.2d 670, 672–73 (Minn.Ct.App.1987) (quoting *Vanderlinde v. Wehle,* 274 Minn. 477, 482, 144 N.W.2d 547 550–51 (1966)), *pet. for rev. denied* (Minn. Mar. 18, 1987).

The misconduct cited by the Rupperts is defense counsel's remark to the jury during closing argument that the jury, in awarding damages, should be fair and equitable not only to Marilyn Ruppert, but also to Yaeger, "the person who will have to pay any amount that you—." At this point Rupperts' counsel objected, and no further reference to the topic was made.

The remark was a brief one and timely stopped; Rupperts' counsel did not sit on his rights. The judge overruled the objection, but Yaeger's attorney wisely made no further reference to the inaccurate statement suggesting to the jury that Yaeger was uninsured.

We hold that, because the mention of insurance coverage is analogous to implying that a particular person must pay, Yaeger's counsel's remark to the jury was improper. The trial court erred in overruling the objection, but Rupperts' counsel did not request a corrective instruction. There is ample Minnesota law showing that reference to insurance can be improper. *Clark v. Johnson Brothers Construction*, 370 N.W.2d 896, 900 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 19, 1985); *see also Beebe v. Kleidon*, 242 Minn. 521, 527–28, 65 N.W.2d 614, 618 (1954) (argument which arouses prejudice by bringing in irrelevant facts concerning financial standing will not ·be condoned); *Donohue v. Acme Heating Sheet Metal and Roofing Co.*, 214 Minn. 424, 425–26, 8 N.W.2d 618, 619 (1943) (the existence of insurance is immaterial for purposes of defeating recovery of damages).

The facts of *Vanderlinde* are similar to the facts before us. The incident as it appears in that record is:

> [COUNSEL FOR APPELLANT]: * * * It's a serious thing when you start reaching into one person's pocket and taking money from it—
>
> [COUNSEL FOR RESPONDENT]: Your Honor, I object to that comment of counsel.·
>
> [COUNSEL FOR APPELLANT]: and giving it—
>
> [COUNSEL FOR RESPONDENT]: Wholly improper and I move that the jury be instructed to disregard that comment. He knows very well that that is not the case.

*Vanderlinde*, 274 Minn. at 481, 144 N.W.2d at 550. On appeal the court did not find a new trial warranted and distinguished it from *Purdes v. Merrill*, 268 Minn. 129, 128 N.W.2d 164 (1964), in which the court granted a new trial because the jury was practically told of insurance liability limits in an argument.

The Rupperts must show that counsel's misconduct resulted in prejudice to the "losing party." *Eklund v. Lund*, 301 Minn. 359, 362, 222 N.W.2d 348, 350 (1974).

The damages awarded were, in the words of the trial court, "suprisingly low." However, the trial court found there was ample evidence to support the verdict. A neurologist testified that Paul Ruppert had no permanent injury to his head or neck. Income loss was disputed by the expert testimony of an experienced sprayer, and 1985 tax forms refuted Paul Ruppert's claim of large lost profits from the farm. He also had no documentation to support his claim of numerous offers for spraying work.

Marilyn Ruppert's testimony raised the issue of her credibility. On review the court will assume the jury disbelieved any testimony in conflict with the result it reached. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). She initially withheld the fact that she entered a chemical dependency program on the same day she left work, and told the jury that entering the program had no impact on her decision to quit, blaming only her injured thumb.

The parties have presented sharply conflicting versions of the facts on damages and income loss, yet we must view the evidence in the light most favorable to the verdict. *Caswell v. Minar Motor Co.*, 240 Minn. 213, 216, 60 N.W.2d 263, 265 (1953). We conclude that the jury was more likely to have been swayed by its assessment of the credibility of the Rupperts' testimony than by the improper remark of counsel and that the trial court's error was therefore harmless.

### III

The Rupperts contend the trial court applied the wrong standard of review in analyzing whether the verdict was, as a matter of law, insufficient. They claim that the correct standard to be applied is found in Minn.R.Civ.P. 59.01 (5) and (7) regarding new trials:

> A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:
>
> (5) Excessive or insufficient damages, appearing to have been given under the influence of passion or prejudice;

(7) The verdict, decision or report is not justified by the evidence, or is contrary to law; but, unless it be so expressly stated in the order granting a new trial, it shall not be presumed, on appeal, to have been made on the ground that the verdict, decision, or report was not justified by the evidence.

When referring to the injuries of Marilyn Ruppert in its memorandum, the trial court stated:

Had this court been the fact finder, some damages would have been awarded for those injuries. In view of the minimal nature of the injuries, however, it cannot be said that the jury's verdict was completely unjustified.

The Rupperts argue that the trial court's comment, "it cannot be said the jury's verdict was completely unjustified," applies a totally new and different standard. They argue that, had the correct legal standard been applied, a new trial should have been granted.

Both parties cite *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 401 (Minn.1981), which gives the standard of "[w]hether there is any competent evidence reasonably tending to support the verdict."

A plain reading of the trial court's memorandum shows that it performed a thorough analysis of the evidence and the jury's findings. The court felt that, in light of the minimal nature of Marilyn Ruppert's injuries, there was competent evidence reasonably tending to support the verdict on future damages alone.

■ The trial court was not using formal phrasing in its memorandum; rather, it was attempting informally to explain the jury's findings. It was not attempting to articulate the standard of review. We hold that the verdict was supported by competent evidence and by permissible jury inferences from it.

## DECISION

■ The jury awarded sufficient damages as a matter of law. Although counsel improperly argued to the jury, it did not result in prejudicial error requiring a new trial. The trial court did not apply an incorrect standard in considering the motion for a new trial.

Affirmed.