*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2027**

Erin Shegrud,
Appellant,

vs.

Garner Berry Eeg, et al.,
Respondents,

Christa Blumer, et al.,
Defendants,

State Farm Insurance Company, intervenor,
Respondent

**Filed September 8, 2015
Affirmed in part and reversed in part
Ross, Judge**

Roseau County District Court
File No. 68-CV-12-879

Alan B. Fish, Alan B. Fish, P.A., Roseau, Minnesota (for appellant)

Jerome D. Feriancek, Ryan C. Stutzman, Thibodeau, Johnson & Feriancek, PLLP, Duluth, Minnesota (for respondents Eeg, et al.)

Angela C. Shackleford, Labore, Guiliani & Viltoft, Ltd., Hopkins, Minnesota (for respondent State Farm Insurance Company)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Klaphake, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

This negligence action arises from a multicar collision that resulted from brushfire smoke that obscured roadway visibility near Greenbush, Minnesota. Erin Shegrud, a passenger in one of the cars, sustained injuries and sued various drivers and the farmers who lit the fire. A jury found the farmers 10% responsible for the collision and awarded Shegrud damages for past medical expenses and past pain but not for past wage-loss or any future losses. Shegrud asks us on appeal to remedy the jury's failure to award her any damages for past wage-loss, future medical expenses, and future pain, maintaining that the jury was influenced by improper remarks by the farmers' attorney. Because the verdict necessarily indicates that the jury found that Shegrud is entitled to lost wages while she recovered from her surgeries, we reverse in part and remand for the district court to award damages for lost wages that the jury's special verdict failed to include. But we otherwise affirm because the record lacks evidence from which the jury could reasonably determine the cost of any future surgery and because remarks by defense counsel did not prejudice the jury.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

Garner Eeg farms land near Greenbush, and on a September day in 2011 he burned brush along roads adjacent to his fields. He monitored the fires from a distance. The wind shifted and blew smoke across a road.

Dorothy and Odeen Anderson drove through the smoke slowly. Christa Blumer drove into the smoke behind the Andersons. The haze became heavy, and she momentarily saw a silhouette of the Andersons' car just in front of her, so she stopped in the "complete whiteout." Patrick Sullivan drove next into the smoke. Erin Shegrud was a passenger in his van. Sullivan had noticed the smoke from about three miles back and saw that it originated in a burning field. From one mile back he saw that the smoke was covering the road. Sullivan continued on and entered the smoke, reducing his speed from 60 miles per hour to about 40 or 50. The smoke became thicker, and Sullivan began braking. He suddenly saw Blumer's car only 10 or 15 feet ahead of him. Sullivan's van struck Blumer's car at 35 to 40 miles per hour. Shegrud, who was sitting in the backseat, was thrown to the front of the van. She suffered injuries to her left side, including a fractured hip.

Shegrud brought negligence claims against Sullivan, Blumer, the Andersons, Eeg, and others associated with Eeg's farming operation. She settled with all the defendants except Eeg and his farming associates and went to trial against them alone.

Shegrud gave detailed testimony about her pain and medical treatment, which included hip-repair surgery days after the collision and hip-replacement surgery in 2013. The parties stipulated that her total past medical expenses were $146,506.89.

Shegrud missed six months of work immediately after the collision and seven weeks of work after her second surgery two years later. Payroll records created by Shegrud's employer established without dispute that Shegrud received no wages or 401k contributions from the employer during these absences. Shegrud's tax returns established that her only 2011 income accrued before the collision. Similarly her 2012 tax forms establish that all her 2012 income accrued after she returned to work in March.

Just before trial, Shegrud claimed $38,052 in total wage-loss for her six-month and seven-week treatment periods. At trial, she instead claimed she incurred $74,243 in lost wages. She also alleged ongoing medical problems. She had received cortisone injections and been prescribed medication to alleviate pain where a screw from her first surgery protruded into her pelvic area. She scheduled an operation to remove the screw. Although she had not removed the screw, any pain she suffered from it did not prevent her from working without restriction, from traveling internationally, or from participating in motorcycling and snowmobiling.

The jury found Sullivan 85% at fault for the accident, Blumer 5% at fault, and the farmers 10% at fault. It assigned Shegrud the stipulated amount of $146,506.89 for her past medical expenses and $60,000 for her past pain, disability, disfigurement, embarrassment, and emotional distress. It did not award any damages for past wage-loss, future healthcare expenses, future pain or disability, or loss of future earning capacity. The district court entered judgment against the farmers and ordered them to pay $41,751.63 in damages and costs to cover their portion of fault. Shegrud moved for a new trial, but the district court denied her motion.

4

Shegrud appeals.

**D E C I S I O N**

Shegrud seeks a new trial. She argues that the jury acted out of prejudice and that the evidence required it to award greater damages. She also maintains that the farmers' attorney engaged in several instances of attorney misconduct.

**I**

Shegrud convincingly argues that she is entitled to more damages than those awarded by the jury. She argues that the evidence required the jury to award damages for lost wages, for her upcoming surgery to remove the screw in her pelvis, and for future pain and suffering.

Shegrud asks us to reverse the district court's decision denying her a new trial on the question of damages for lost wages. We will reverse the district court's decision to deny a motion for new trial only for a clear abuse of its discretion. *Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 629 (Minn. 2012). A district court may grant a new trial if the damages are insufficient and appear "to have been given under the influence of passion or prejudice" or if the "verdict . . . is not justified by the evidence." Minn. R. Civ. P. 59.01(e), (g). We will not upset a jury verdict on an appeal from the denial of a motion for a new trial unless the verdict "is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Navarre v. S. Washington Cty. Sch.*, 652 N.W.2d 9, 21 (Minn. 2002) (quotation omitted).

The jury verdict informs us that Shegrud is entitled to an award for lost wages. The undisputed evidence established that Shegrud missed almost eight months of work

5

and received no wages during the two treatment periods. The parties stipulated to the medical damages that resulted from the collision, and this stipulation along with the corresponding jury verdict necessarily assumes Shegrud's need for the treatment and for the time off work necessary for her to receive the treatment and recover. Although the parties did not stipulate to any amount of wage-loss during this period, the undisputed documented wage evidence proves that Shegrud went without any wages while she was out of work in her treatment and recovery periods. The jury may have been confused by Eeg's attempt to associate Shegrud's recreational activities with her wage-loss claim. But counsel conceded at oral argument on appeal that none of Shegrud's activities occurred during her treatment and recovery periods. The jury's decision to award zero damages for any lost wages is manifestly and palpably contrary to the evidence and cannot be reconciled with its award for both past medical expenses and past pain. The district court abused its discretion by denying Shegrud's motion for a new trial on her past-wage-loss claims. We therefore reverse and remand for the district court to grant Shegrud's new-trial motion and determine the amount of recoverable lost wages.

Shegrud argues that the evidence also proved that she will experience future pain and suffering and will undergo additional surgery to remove the protruding screw installed in one of the previous surgeries. A jury can award damages for future pain based on evidence that the plaintiff has not yet fully recovered. *Renswick v. Wenzel*, 819 N.W.2d 198, 205 (Minn. App. 2012), *review denied* (Minn. Oct. 16, 2012). But the trial evidence of future pain and the need for and cost of any additional surgery was not so

certain that we can deem the jury's decision not to award damages to cover them as manifestly and palpably contrary to the evidence.

The evidence of Shegrud's alleged ongoing pain and her need for additional surgery was unclear and reasonably disputed. Considering the issue in the light most favorable to the verdict, even the farmers' medical expert acknowledged that Shegrud still experienced pain under certain circumstances and might need part of a screw removed if it continued to bother her. The expert opined that the screw removal would eliminate any remaining pain arising from the accident. But he also emphasized that Shegrud's injury no longer prevented her from working or from engaging in her preferred recreational activities. The jury received substantial evidence of these activities. It learned that, after the collision, Shegrud traveled to Ireland, Mexico, and Hawaii; that she bestrode a motorcycle on a 1,200-mile round-trip to Sturgis, South Dakota; and that she operated various all-terrain vehicles. Again considering the issue in a light that most favors the verdict, from this evidence the jury may have reasonably found that Shegrud failed to prove that she suffered significant post-surgery pain that entitled her to compensation or that she would actually undergo additional surgery to remove the painful screw.

Shegrud's appeal on this issue of future medical expenses faces another dispositive obstacle. Even if the jury had received compelling and unchallenged evidence that Shegrud experienced significant ongoing pain, still we would not remand for the district court to address the medical cost of remedying the pain if the jury received no compelling evidence defining that cost. Shegrud had the burden of proving "the

reasonable certainty of [medical] expense by a fair preponderance of the evidence." *Kwapien v. Starr*, 400 N.W.2d 179, 184 (Minn. App. 1987). To meet that burden, she had to "present some evidence of what the expenses will be." *Id.* She could not rely on the jury to speculate about the cost. *Id.* at 183. But Shegrud never informed the jury how much the screw-removal surgery or any other future medical treatment would cost. She gave the jury no evidence even estimating the cost. She did present the jury with bills from her two prior surgeries, but she offered no evidence allowing the jury to find that the cost of the prior fracture-repair surgery or the cost of the hip-replacement surgery bears any relationship to the cost of the potential screw-removal surgery or any other medical care. Only by inappropriately speculating could the jury have concluded that each of these surgeries cost the same as the others. So even if the evidence had established that Shegrud would certainly undergo the additional surgery (and it did not), the jury had no basis on which it could have awarded damages to cover the cost of the surgery. For all of these reasons we cannot say that the verdict denying damages for future pain and medical expenses is infirm. The district court's refusal to grant a new trial on damages for these expenses therefore does not reflect an abuse of discretion.

## II

Shegrud alleges misconduct by the farmers' attorney and asks us to reverse and remand for a new trial to remedy the resulting unfairness. The district court has discretion to decide whether to grant a new trial because of prejudice arising from attorney misconduct. Minn. R. Civ. P. 59.01(b); *see also Johnson v. Washington Cty.*, 518 N.W.2d 594, 600 (Minn. 1994). The district court experiences the trial firsthand and is best

8

positioned to judge whether alleged misconduct prejudiced any party. *Johnson*, 518 N.W.2d at 601. We will reverse a district court's denial of a motion for a new trial "only upon a clear showing of abuse of discretion or if the improper comments prejudiced [the appellant] to such an extent that allowing the result to stand would be unjust." *State Farm Fire & Cas. Co. v. Short*, 459 N.W.2d 111, 114 (Minn. 1990).

Shegrud first complains that the farmers' counsel prejudiced her case to the jury by asserting that Eeg and his farming associates would be personally obligated to pay any damages awarded to Shegrud. "[R]eference to insurance can be improper." *Ruppert v. Yaeger*, 414 N.W.2d 419, 424 (Minn. App. 1987). And a statement that a defendant would have to pay damages may suggest a lack of insurance coverage. *Id*. at 423–24. The attorney here referred to Shegrud's recreational activities and stated, "[Y]ou don't get to do all the fun things in life and then ask the Eeg family to pay for the work things in life." In context, the statement seems to have been intended to contrast Shegrud's request for lost wages based on her alleged inability to work with her apparent ability to engage in recreational activities. But counsel on appeal acknowledged that Shegrud's recreational activities did not occur during the periods of Shegrud's surgical recovery. And even if a plausible proper strategy existed, the statement may have nonetheless improperly implied that the Eegs lacked insurance coverage and would suffer personally from any award.

But "[q]uestions of prejudicial misconduct with respect to insurance coverage disclosure are 'peculiarly within the discretion of the trial court [judge] who was in a better position to judge than are we the impact of statements made to or in the presence of the jury.'" *Anderson v. Rumsey*, 398 N.W.2d 670, 672–73 (Minn. App. 1987), *review*

9

*denied* (Minn. Mar. 18, 1987) (quoting *Vanderlinde v. Wehle*, 274 Minn. 477, 482, 144 N.W.2d 547, 550–51 (1966)). The district court was aware that the allegedly improper statement was brief in the context of the entire trial and closing argument. The statement was not so clearly prejudicial that we can say that the district court acted outside its discretion by refusing to grant a new trial based on it.

Shegrud also asserts that Eeg's counsel inappropriately stated that the other defendants' negligence prompted them to settle. The transcript supports the assertion. Evidence that a party has accepted a compromise cannot be relied on to prove its liability. Minn. R. Evid. 408. So the issue again is whether the improper argument prejudiced Shegrud, and again the district court has considerable discretion to make that call.

Weighing heavily against Shegrud's position that we should reverse is the district court's instruction to the jury expressly prohibiting any link between the settlement and any settling party's negligence. We assume that juries follow the district court's instructions, including instructions to disregard improper remarks or arguments. *See Wild v. Rarig*, 302 Minn. 419, 433, 234 N.W.2d 775, 785–86 (1975) (affirming the denial of a new-trial motion). Our reliance on jury obedience defeats Shegrud's argument for a new trial.

Shegrud cites cases that require a new trial based on a factor not apparent here: verdict inconsistency. The supreme court has stated, "Inadequacy of damages coupled with a finding of liability shows failure to give the case impartial and conscientious consideration." *Kloos v. Soo Line R.R.*, 286 Minn. 172, 178, 176 N.W.2d 274, 278 (1970). But here the jury assigned significant damages consistent with its finding that the

farmers were in fact negligent. And the circumstances of this case do not raise any suspicions about the jury's apportionment of fault. The jury assigned most of the fault to Sullivan, Shegrud's driver, which is consistent with the fact that Sullivan had noticed the smoke from a great distance away and, rather than reduce to a safe speed consistent with the apparent visibility deficit, he drove into the plume nearly blindly and at such a high speed that he was still moving at 35 to 40 miles per hour when he struck Blumer's car. And despite what appears to be Sullivan's obviously fair assignment of most of the negligence, the jury left some fault to apportion to the farmers, assigning them 10%, which is second only to Sullivan's portion. Nothing in this apportionment suggests any inconsistency between the evidence and the findings or between the findings and the verdict. In sum, the verdict is not inadequate in light of the evidence such "that we are convinced that it could only have been rendered on account of passion or prejudice." *Krueger v. Knutson*, 261 Minn. 144, 154, 111 N.W.2d 526, 533 (1961). The district court did not abuse its discretion by refusing to grant Shegrud's motion for a new trial on this ground.

Shegrud next contends that Eeg's attorney mentioned settlement several other times to suggest that Shegrud had already been compensated for her injuries. All of these references are brief, and none draws attention to compensation. For example, counsel clearly intended one statement to expose Sullivan's potential bias as a witness and to explain why his trial testimony differed from his deposition. The district court properly allowed the argument to inform the jury of Sullivan's position as a settling defendant. *See Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn. 1978) (holding that when a settling

11

defendant "is called to testify by one of the remaining parties, the trial court should inform the jury of the effect of the release, so that they might consider any bias of the witness"). Shegrud does not make a convincing case that any of the minimal references to settlement constitute reversible misconduct.

Shegrud also argues that Eeg's attorney prejudiced her case by falsely representing that she had filed multiple lawsuits, when in fact she sued all defendants in the single suit. Shegrud is correct that the attorney gave the false impression through questioning, but the impression did not prejudice the outcome because the district court immediately corrected the attorney's error.

On balance, it is clear to us that the district court properly managed the trial and that the only discernable and reversible error is its failure to recognize the inconsistency between the jury's award for past medical costs and its failure to award damages for past lost wages that necessarily and certainly resulted from the circumstances that required those medical costs.

**Affirmed in part, reversed in part, and remanded.**